## MICHAEL CHEEVERS'S CASE.

Berkshire.    September 8, 1914. — November 24, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Workmen's Compensation Act.   Words,  "Casual."*

Before the passage of St. 1914, c. 708, § 13, a teamster having three or four sepa-
rate horses and teams, who was sent for whenever he was needed by the pro-
prietor of a coal yard doing a retail coal business, and at such times was employed
by such coal dealer for periods of a number of successive days but "for no fixed
duration of time and for no specified job" and while so employed "worked the
same as any other of [the coal dealer's] regular men," if he was injured in the
course of such employment, was not entitled to compensation under the work-
men's compensation act, because his employment was "but casual" within
the meaning of the definition of the word "employee" contained in St. 1911,
c. 751, Part V, § 2, before its amendment by the statute first mentioned above.

APPEAL to the Superior Court under St. 1911, c. 751, Part
III, § 11, as amended by St. 1912, c. 571, § 14, from a de-
cision of the Industrial Accident Board, which is stated in the
opinion.

The case was heard by *Hardy*, J., who made a decree that
Michael Cheevers, the alleged employee, was not entitled to
compensation, confirming the decision of the Industrial Acci-
dent Board, which reversed the decision of the committee of
arbitration.

Cheevers appealed from the decree.

*P. J. Moore*, for the alleged employee.

*A. L. Richards*, for the insurer.

LORING, J.   Cheevers contended that he was an employee of
one Pierce and that he was entitled to compensation for an injury
suffered by him while in that employ.

The facts found by the committee of arbitration were in sub-
stance as follows:

Cheevers conducted a teaming business in the city of Pitts-
field, "having three or four separate horses and teams." He em-
ployed several men to work with these horses and teams beside
working with them himself. He did work for various persons in
Pittsfield and that vicinity.

Pierce owned a coal yard in Pittsfield, where he did a retail coal business. At different times in 1911, 1912 and 1913, Pierce employed Cheevers to deliver his [Pierce's] coal with his [Cheevers's] horse and team. The course of business was for Cheevers to come to the yard with his horse and team, put the coal into bags and lift them into his cart, or fill his cart in bulk from the chute; Cheevers "usually" was helped in doing this by a laborer employed by Pierce; Pierce gave Cheevers written slips with the names and addresses of the purchasers of the coal, and with directions "to assist in carrying and putting the coal into the houses;" and the man who helped Cheevers in loading the coal at the yard went with him to help in putting the coal into the houses. This helper was paid by Pierce. Cheevers was paid $5 a day for himself and his team. Pierce "hired Cheevers for this general work for no fixed duration of time and for no specified job." When Pierce wanted Cheevers he would say to him, "I want you to come up and help me," and when asked by the committee of arbitration whether Cheevers would have a right to send another man, Pierce replied, "No, I wanted Cheevers, because he knew how to handle coal."

As we construe the record, the accident happened on February 25, 1913, though in one place in the record it is stated that it happened on February 28, 1913. On this day Cheevers fell from his cart while delivering coal. One of Cheevers's men tried to do the work for Pierce on the following day in Cheevers's place, but was not able to do it to Pierce's satisfaction; and Cheevers's horse and team and man were not employed further. The last period Cheevers worked for Pierce (that is to say the period here in question) was on February 7, 8, 10, 11, 12, 13, 15 and 25. The last period before that was on February 1, 2, 5, 6 and 7, 1912. In addition, the arbitration committee made this further finding, to wit: "Cheevers worked the same as any other of Pierce's regular men, under his orders, loading, driving, and putting in coal." The committee decided "that in doing this work, Cheevers was so under the direction and control of Pierce, that the relation between them was that of master and servant," and made an award in his favor.

The Industrial Accident Board, on review of this decision of the committee of arbitration, made the following decision: "The

Board, upon the facts found by the committee, believes that an error of law was made in the conclusion of the committee and accordingly reverses its decision. This reversal is made in accordance with the decisions in *Hunt* v. *New York, New Haven, & Hartford Railroad,* 212 Mass. 102, at page 107; *Hussey* v. *Franey,* 205 Mass. 413; *Shepard* v. *Jacobs,* 204 Mass. 110; *Delorey* v. *Blodgett,* 185 Mass. 126; *Driscoll* v. *Towle,* 181 Mass. 416, at pages 418, 419. Cheevers, the injured man in this case, was in the general business of teaming, as a proprietor on his own account, owning horses and wagons and employing men to drive and work with them. According to the above decisions, and as stated with particular clearness in *Hussey* v. *Franey* and *Driscoll* v. *Towle,* it is held to be an implied understanding that the proprietor of such a teaming business retains the control of his horses and wagons when in use, and of their loading and unloading, and is therefore an independent contractor in doing such work."

Cheevers has contended that by reason of the special finding made by the committee, this case is taken out of the ordinary rule (applied in *Hussey* v. *Franey* and *Driscoll* v. *Towle, ubi supra*), and is brought within the decision in *Linnehan* v. *Rollins,* 137 Mass. 123. We do not find it necessary to come to a decision upon that contention because we are of opinion that on the facts found by the committee Cheevers's employment was casual.

The meaning of this clause was considered at length in *Gaynor's Case,* 217 Mass. 86. In addition to what was said there it may be of importance (in determining whether in a particular case the "employment is but casual") to have in mind the apparent reason for this limitation upon the class of persons who are entitled to the benefits of the workmen's compensation act. The scheme created by the workmen's compensation act is a scheme of insurance in which the premiums to be paid by the employer are based upon the wages paid by him to his employees. It may have been thought impracticable to work out a scheme of insurance if persons who are only occasionally employed are to be included among those insured. This limitation was repealed by St. 1914, c. 708, § 13.

Both on the reasoning in *Gaynor's Case* and having in mind the reason for this limitation, we are of opinion that Cheevers's employment was but casual. In *Howard's Case,* 218 Mass.

404, the employee was continuously employed, though not by the same employer, and for that reason the employment was not an employment which was "but casual." For a similar case see *Sabella* v. *Brazileiro,* 91 Atl. Rep. 1032. In *Schaeffer* v. *De Grottola,* 56 Vroom, 444, and in *Scott* v. *Payne Brothers,* 56 Vroom, 446, the employment was, or could be found to have been, employment for an indefinite period, and therefore not casual.

The entry must be

*Decree affirmed.*