DYER *v.* JAMES BLACK MASONRY & CONTRACTING CO.

1. MASTER AND SERVANT—WORKMEN'S COMPENSATION LAW—CASUAL EMPLOYMENT.

Where claimant and his partner had a contract with respondent to do the glazing on a building, and claimant was also engaged, at additional compensation, to look after the glass as it arrived from time to time, and see to its unloading, such employment was not "casual" within the meaning of section 7, pt. 1, Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5429), defining "employee."[1]

[1] The question as to who are casual employees within the meaning of the workmen's compensation act, is discussed in L. R. A. 1916A, 365.

2. SAME—INDIVIDUAL LABOR.

Such employment of claimant was not within the terms of the firm's contract for glazing, but was individual labor being performed by claimant for respondent, and he was entitled to compensation under the act for injuries received while so employed.

Certiorari to the Industrial Accident Board. Submitted June 13, 1916. (Docket No. 82.) Decided July 21, 1916.

Sid Dyer presented his claim for compensation against the James Black Masonry & Contracting Company for personal injuries while in defendant's employ. From an order awarding compensation, defendant brings certiorari. Affirmed.

*Frederick T. Witmire,* for appellant.

*William J. Lehmann,* for appellee.

STONE, C. J. This case is before us upon certiorari to the Industrial Accident Board; the case in its progress having regularly reached the board, which granted compensation to the claimant, from which order the respondent appeals.

Claimant was injured December 10, 1914, at the David Stott Building, in Detroit. He and his partner, John Ross, were at the time of the accident engaged in doing the glazing on the building in question under the following written contract with the principal contractor:

"DETROIT, MICHIGAN, Nov. 19, 1914.
"SIDNEY DYER & JOHN ROSS,
    "City.
"*Gentlemen:*
"We hereby accept your proposition for furnishing all labor and materials necessary (with the exceptions) dated June 2, 1914, and the plans, for the sum of three hundred and twelve ($312.00), payable on

192 Mich.—26.

the completion of the work and the acceptance of the architects, Marshall & Fox.

"It is understood between us that the glass is to be furnished you at the site of the said building and you are to take it from there and glaze it.

"It is also understood that you are not to glaze any glass which is called for to be done by any other contractor rather than the glazing contractors. The glazing contractors are Sidney Dyer and John Ross, working under the name of Dyer & Ross.

"It is mutually understood that the glazing contractors are to be responsible and will replace all glass broken by them in handling or setting the glass.

"JAMES BLACK MASONRY & CONTRACTING CO.,
     "By [Signed] A. E. BLACK, Vice President.
EAB : CVR
                                    "Nov. 19, 1914.
     "Accepted by DYER & ROSS, Glaz. Contractors.
                         "By [Signed] SIDNEY DYER."

The principal contractor, finding that it was necessary in the progress of the work to have some person assist in and look after the delivering of the glass at the building and see to the unloading of the glass, arranged with the claimant to do this work, from time to time, as the glass arrived, for which services claimant was to receive and did receive payment from the principal contractor. The glass was, in fact, delivered from time to time at the building, under a contract between the principal contractor and the Pittsburgh Plate Glass Company.

The Industrial Accident Board found that in doing the work of glazing under said written contract the claimant and his partner were independent contractors. The board further found as follows:

"The arrangement made with the applicant under which he was to look after the delivery and unloading of the glass fairly includes giving such reasonable assistance in unloading as he might deem necessary. It cannot reasonably be restricted to merely overseeing and directing, but fairly included any reasonable assistance in unloading the glass which was reasonably

necessary to accomplish the object for which he was employed. The injury therefore which he received in assisting in the unloading arose out of and in the course of his employment.

"The arrangement under which applicant was to look after and assist in the unloading of the glass was no part of his contract work. While it is doubtless true that the arrangement was made with him because he was doing the glazing on the building, it might have been made by the principal contractor with any other person who happened to be in the vicinity, and who could conveniently do the work at such times as the loads of glass arrived at the building. It seems clear that the applicant was the employee of the principal contractor for the work in question, and that he is entitled to compensation for the injury unless the employment was casual within the meaning of the workmen's compensation law.

"It should be noted that this work was being done by Sid Dyer individually, and not by the firm of Dyer & Ross. It was billed as an individual account with Mr. Dyer and paid as such. The date of the contract for the glazing work was November 19, 1914; the injury occurred December 10, 1914; and it appears from the evidence that the work was not finished until the latter part of March. It also appears that the work to be done was periodic in its nature; that is, from time to time, as the loads of glass arrived at the building. The building was a large one, and the time during which this work would have continued had it not been for the accident would extend over a number of months. While it is true it was not steady work, or work that consumed a larger portion of his time, yet it recurred at intervals with the progress of the work, and would have continued until the job was finished. Under these facts we think that the employment was not casual."

There was testimony of the claimant to the following effect:

"*Q.* Now, you were working there on this contract, were you?
"*A.* Yes, sir.

"*Q*. While you were working on this contract state whether or not you were engaged to do other work.

"*A*. I was engaged to do other work; that is, Mr. Brennan asked me to look after the delivering of the glass, which was not in the contract. I told him, I says, 'Well,' I says— He says, 'I am pretty busy, and I would like to have you look after that work.' I said, 'You will have to do the signing; you will have to sign for the glass when it is delivered.'

"*Q*. Did you help with the delivery of the glass?

"*A*. Yes, sir.

"*Q*. Do you know when the first load was delivered?

"*A*. Why, I cannot say when the first load was delivered. It was prior to December, it was probably somewhere around Thanksgiving, that the first glass was delivered there.

"*Q*. Did you help with the delivery of that?

"*A*. Yes, sir.

"*Q*. Did you help unload it?

"*A*. Yes, sir.

"*Q*. Put it in the—

"*A*. (interrupting). Put it in the building.

"*Q*. Was that part of your duty under this contract?

"*A*. No, sir; it was not part of my duty at all.

"*Q*. Was Mr. Brennan around at that time when you were doing this?

"*A*. Yes, sir; Mr. Brennan passed through the building while I was doing that.

"*Q*. When did the second load come?

"*A*. Well, it might have been ten days after.

"*Q*. Did you help with the delivery of that?

"*A*. Yes, sir.

"*Q*. Help unload it?

"*A*. Yes, sir; I put my hands on the case steadying it.

"*Q*. Was there help needed there at that time?

"*A*. Why, it is always in taking off glass, it requires somebody that is accustomed to that kind of work for to do it, and they were kind of shorthanded, and I naturally helped out. I thought that was what Mr. Brennan wanted me to do; he asked me to look after the delivering of it.

"*Q*. State whether or not you were injured at the

time that you were assisting in unloading the second load.

"A. I was."

Witness then proceeded to describe the injury.

The substance of this testimony was repeated upon the cross-examination of the witness. No question was raised that Mr. Brennan, who was the superintendent of the respondent, made the arrangement with the claimant, as testified to by the latter, that he had authority to do so, and that claimant was personally paid for such extra services by check signed in the name of the respondent, by Mr. Brennan as superintendent.

The questions raised by the assignments of error relied upon by appellant are as follows:

(1) Whether applicant was an employee within the meaning of the workmen's compensation act, or one whose employment was but casual, and whether the finding of the Industrial Accident Board that applicant was an employee at the time of the injury was justified by the evidence.

(2) Whether applicant was an employee or independent contractor at the time of the injury.

A part of section 7 of part 1 of Act No. 10, Extra Session 1912 (2 Comp. Laws 1915, § 5429), defines the term "employee" as follows:

"Every person in the service of another under any contract of hire, express or implied, oral or written, * * * but not including any person whose employment is but casual or is not in the usual course of the trade, business, profession or occupation of his employer."

1. It is urged by appellant that the employment of claimant in doing the work in which he was engaged was but casual; and it is said that the word "casual," as used in the section quoted, should be taken in its ordinary sense; that there is nothing in the context of

the law to indicate that the legislature intended to give it an enlarged or unusual meaning. The following definition is quoted from 6 Cyc. p. 701:

"Casual. Not designedly brought about; happening by accident or brought about by an unknown cause."

The following definition is quoted from the laws of Nebraska:

"The word 'casual' shall be construed to mean 'occasional'; coming at certain times without regularity; in distinction from stated or regular."

It is the claim of counsel for appellant that the instant case is controlled by *Gaynor's Case*, 217 Mass. 86 (104 N. E. 339, L. R. A. 1916A, 363), and *Cheever's Case*, 219 Mass. 244 (106 N. E. 861), which were decided under a statute exactly like ours. We are unable to agree with counsel that those cases are controlling of the instant case, and we think they are readily distinguished.

In *Gaynor's Case* the deceased employee was a waiter employed at the time his injuries were received by T. D. Cook & Co., Inc., a caterer, having a regular place of business in Boston. It had a contract to serve a banquet at Mt. Holyoke College, South Hadley, and on the day before engaged deceased for service at that banquet. Its agent told the deceased that, if he would report at the South Station, Boston, the next morning, he could go to South Hadley at its expense with the other waiters. The wage for the service was to be $4, together with transportation from Boston to South Hadley and return. The deceased reported at 7 o'clock on the morning of the next day, reached South Hadley at 11:30 o'clock of the forenoon, and was injured while preparing to serve the banquet. This was the first time he had ever worked for this employer. The work was finished at 5 o'clock in the afternoon, and the decedent then would have been entitled to $4, and

would have been at liberty either to return to Boston at the expense of his employer, or to go elsewhere on his own account. It was a part of the regular business of the employer to provide and serve banquets, but for such service no men were regularly employed. The custom of the catering business is that such banquets are served by waiters secured for the particular occasion. Such a waiter might work for different employers on the same day, or for many different employers on successive days. The court, after stating the above facts, said:

"The point to be decided is whether the deceased was an employee as defined in the workmen's compensation act."

Quoting language exactly like that contained in our own statute, the court further said:

"The crucial words to be construed are those contained in the exception out of the class of employee of 'one whose employment is but casual.' The word 'casual' is in common use. Its ordinary signification, as shown by the lexicographers, is something which comes without regularity and is occasional and incidental. Its meaning may be more clearly understood by referring to its antonyms, which are, 'regular,' 'systematic,' 'periodic,' and 'certain.'   *   *   *

"It would be difficult to conceive of employment more nearly casual in every respect than was that of the employee in the case at bar. The engagement was for a single day, and for one occasion only. It involved no obligation on the part of the employer or employee beyond the single incident of the work for four or five hours at the college. That would have had its beginning and ending, including the outward and returning journeys (but for the unfortunate accident), within a period of less than 24 hours. The relation between the waiter and the caterer had no connection of any sort with any events in the past. Each was entirely free to make other arrangements for the future, untrammeled by any express or implied expectations of further employment."

We think the *Gaynor Case* is so clearly distinguished from the instant case that further comment is unnecessary.

In *Cheever's Case, supra,* a teamster, having three or four separate horses and teams, who was sent for whenever he was needed by the proprietor of a coal-yard doing a retail coal business, and at such times was employed by such coal dealer for periods of a number of successive days, but "for no fixed duration of time and for no specified job," and while so employed "worked the same as any other of [the coal dealer's] regular men," was injured in the course of such employment. It was held that he was not entitled to compensation, because his employment was but casual within the meaning of the Massachusetts statute then in force. It will be observed that in *Cheever's Case* the employment was for no fixed duration of time, and for no specified job, thus distinguishing it from the instant case.

Our attention is also called by appellant's counsel to numerous English cases. While they can all be distinguished, it should be borne in mind that the English act differs from ours. In the English act is the following language:

"Workman does not include a person whose employment is of a casual nature *and* who is employed otherwise than for the purpose of the employer's trade or business."

Under the English act, to constitute a defense it must appear that the employment was of a casual nature, and that it was not in the usual course of the employer's trade, occupation, or profession. Our statute uses the word "or," where the English has the word "and," so that, while under the English statute both defenses must exist together in order to defeat liability, it is sufficient under the Michigan act if either exists without reference to the other.

Can it be said that the employment of the claimant in the instant case was purely a chance employment? Was it not rather regular, stated or periodic? Judge Ruegg, in his work entitled "Employers' Liability and Workmen's Compensation," in discussing the English Cases at page 276, says:

"A person who is employed one or more days in each week to do work which must be done, or which it is known it will be advisable to do at these times, is not casually employed. Indeed, whenever the same person under contract with an employer to do work at recurring times, which must or which it is known beforehand it will be convenient to do at such recurring times, the employment of such person, it is believed is not of a casual nature. * * * To take one or two illustrations: If A. employs B. to work one day, or half a day a week in his (A.'s) private garden subject to his control, B. is not casually employed; he is regularly employed at recurring ascertained times. Further, if, in the same illustration, the times are not strictly defined, but the contract is that B. shall do the work required in the garden, as it is required from time to time, no fresh contract or engagement being contemplated between the parties, though a discretion may be left in the workman to select the time or times of work, it is believed the employment is not casual, for, though the work may be of a casual nature, B. is under contract to do it as and when it arises; consequently, his employment is not casual. Much must depend upon the certainty of the work recurring at times which, though they cannot be fixed definitely, yet can be fixed generally, and the work when it arises having to be done by the same person."

In the instant case it is fair to suppose that the general contractor knew how much glass was to be delivered at the building. It became necessary in the interest of the business of the general contractor to have the delivery of the glass looked after and supervised, and claimant was employed for that purpose; that, as the glass was to be delivered as the work progressed on recurring occasions, it certainly cannot be said any of

the necessary work to be done in furthering the job or enterprises was casual, for it was sure to occur and recur in the operation of the job. There was an element of certainty in the work recurring at times which, though they could not be fixed definitely, yet were fixed generally by the agreement to look after and assist in unloading the glass as it arrived, from time to time.

In our opinion, the employment of the claimant was not casual. It has been held that the employment is not casual within the meaning of that term as used in the employers' liability acts where one is employed to do a particular part of the service recurring somewhat regularly with the fair expectation of the continuance for a reasonable period. *Sabella* v. *Brazileiro*, 86 N. J. Law, 505 (91 Atl. 1032) ; *Howard's Case*, 218 Mass. 404 (105 N. E. 636).

In *Thompson* v. *Twiss*, decided by the supreme court of errors of Connecticut on April 19, 1916, 90 Conn. 444 (97 Atl. 328), under a statute like the English act, it was held that the term "casual employment" means occasional or incidental employment, the employment which comes without regularity, and, if the employment be upon an employer's business for a definite time, as for a week, or a month, or longer, or if it be for a part of one's time at regularly recurring periods of time, it is not a casual employment, whether the contract of service or the nature of the service be regarded; and hence a claimant employed by defendant in the development of several tracts of land, who, if he satisfied his employer, would remain to the end of the work, requiring at least a number of weeks, was not engaged in a casual employment.

2. We think that the Industrial Accident Board was correct in its finding that the work being done at the time of the accident was not under the terms of the written contract of November 19, 1914, but was individual labor being performed by the claimant in the

employment of the respondent, and entirely outside the terms and scope of the written contract.

We find no error in the conclusion reached by the Industrial Accident Board, and its order is affirmed.

KUHN, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and PERSON, JJ., concurred.