(No. 11000.—Judgment reversed.)

George McLaughlin, Commissioner of Highways, Plaintiff in Error, *vs.* The Industrial Board of Illinois *et al.* Defendants in Error.

*Opinion filed October 23, 1917—Rehearing denied Dec. 5, 1917.*

1. Workmen's compensation—*making or maintaining an ordinary dirt road is not an extra-hazardous occupation.* A common dirt road is not a "structure" within the meaning of that term as used in paragraph (*b*) of section 3 of the Workmen's Compensation act, and the making or maintaining of an ordinary dirt road in the ordinary way cannot be reasonably said to be a dangerous or extra-hazardous occupation.

2. Same—*provision of the Workmen's Compensation act making townships liable as employers is not invalid.* The provision of the Workmen's Compensation act making townships liable as other employers who are under the act is not invalid, as the legislature has the power to make townships liable for damages to employees employed by their officers, whether caused by the torts of the officers or incidental to the employment.

3. Same—*election not to come under Compensation act may be made by commissioners of highways.* The Workmen's Compensation act contemplates that township officers who employ the workmen and direct the work being done may make the election provided for in the act, and the commissioners of highways may, on behalf of the township, elect not to pay compensation under the act to employees working on the public highways, but if they fail to make the election the township is presumed to be under the act.

4. Same—*damages for which township is liable as employer is part of the cost of the work.* The damages for which, under the Workmen's Compensation act, a township is liable as employer constitute a part of the cost of the work in which the township is engaged, and it is not necessary that the act provide means by which the money may be raised to pay the award.

5. Same—*when dynamiting stumps in repairing road is a casual employment.* Where it becomes necessary, in making a dirt road, to dynamite some stumps, which can be done in a few hours' time and which is seldom necessary in the road work of the district, the work of dynamiting is a casual employment, and a teamster employed by the highway commissioners to plow and grade the road, and who is injured while assisting in the dynamiting, cannot recover under the Workmen's Compensation act.

Carter, C. J., and Farmer, J., dissenting.

Writ of Error to the Circuit Court of Moultrie county; the Hon. George A. Sentel, Judge, presiding.

Whitley & Fitzgerald, and McLaughlin & Thompson, for plaintiff in error.

M. A. Mattox, J. B. Titus, C. R. Patterson, and E. J. Miller, for defendants in error.

Mr. Justice Duncan delivered the opinion of the court:

This case arose under the Workmen's Compensation act of 1913, and comes to this court on a writ of error to review the judgment of the circuit court of Moultrie county quashing a writ of *certiorari* to review the proceedings of the Industrial Board, in which Ida Belle Hiler, administratrix, was awarded $1500 compensation for the death of her husband, Abraham Hiler.

On October 15, 1913, Abraham Hiler, while at work clearing obstructions from a new road being built under the direction of the three highway commissioners of the town of Marrowbone, Moultrie county, was killed by a fragment of a stump as the result of an explosion of dynamite used in the work of removing stumps from the road. Subsequently the township adopted the one commissioner system, and George McLaughlin was elected commissioner and was so acting at the time the proceeding in this case was filed for compensation. Notice of the accident and of claim for compensation was given the three commissioners in office at the time the accident occurred and also to W. G. Younger. Subsequently a petition was filed against Younger alone, and the former petition against him and the commissioners was abandoned. An award against Younger was denied by the Industrial Board, and its decision was confirmed by the circuit court on writ of *certiorari* upon the ground that Younger was not the employer of Hiler. Thereafter the petition in this case was filed against the present acting sole commissioner and the above

award was made. The circuit court, after quashing the writ of *certiorari,* certified that the case was one proper to be reviewed by the Supreme Court.

One of the principal questions raised and discussed in the briefs is whether or not the Workmen's Compensation act applies to this character of a case, and if so, whether or not it is a valid and enforcible act.

Section 1 of the act provides that any employer in this State may elect to provide and pay, under the provisions of the act, compensation for accidental injuries sustained by any employee arising out of and in the course of the employment. Section 2 provides that every employer engaged in an occupation, enterprise or business enumerated in paragraph (*b*) of section 3 shall be conclusively presumed to have elected to provide and pay compensation under the act unless and until notice of his election to the contrary is filed with the Industrial Board and unless and until he has given notice to his employees in the manner prescribed in the act. Each of the occupations, enterprises or businesses enumerated in said paragraph (*b*) are thereby declared to be "extra-hazardous," two of which are, (1) the building, maintaining, repairing or demolishing of any structure; and (6) any enterprise in which explosive materials are manufactured, handled or used in dangerous quantities. Section 4 of the act defines the term "employer," as used in the act, to mean, the "State and each county, city, town, township, incorporated village, school district, body politic, or municipal corporation therein."

By the express language of the statute townships are subject to its terms and provisions, and if engaged in any of the hazardous occupations enumerated in paragraph (*b*) of section 3 are conclusively presumed to have elected to provide and pay compensation under the act unless they have elected to the contrary. The township of Marrowbone gave no notice of its election in either particular, and must be presumed to be under the act if it was engaged, at the

time of the accident to Hiler, in one of the occupations mentioned in paragraph (b) of section 3.

About a week prior to the accident, which occurred on October 15, 1913, L. A. Crockett, one of the three commissioners, who had assigned to him the construction, maintenance and repair of roads in a certain part of the road district, employed W. G. Younger to do some work on a new road about forty rods from Crockett's house. Younger's employment, as stated by Crockett, was for plowing and grading the road and hauling stumps off of the same after they were pulled or blown out, and to do anything on the road he had for him to do. The roads on which they were working were the ordinary country roads and the work in hand was the grading and repairing of the same. Younger was to receive thirty-five cents an hour for a man and a team, or $3.50 per day of ten hours. Younger employed and paid Hiler $1.50 a day, and Hiler had been working for Younger several months prior to the accident. Younger was in the regular business of teaming, including such work as transferring, hauling sand, filling in at bridges and working on roads. Ches. Kennedy and Dan Rinaker were employed by Crockett to blow out the stumps on the new road. Younger was requested by Crockett to bring out some dynamite in his wagon for blowing out the stumps. While waiting for the blasting to be done so they could haul the stumps away, Younger and Hiler assisted in the preparations for the blasting. Hiler bored a few holes under some stumps and Younger lighted the fuse of one or two sticks of the explosive. Hiler was killed in a very short while after the blasting began.

It is argued by the attorneys for the administratrix of Hiler's estate that the work in which Hiler was engaged at the time he was killed was extra-hazardous within the meaning of paragraph (b) of section 3, as the commissioners were building, maintaining, repairing or demolishing a structure within the meaning of that section. We are not

able to agree with that contention. A common public dirt road is no doubt a structure as commonly defined and understood, but it is certainly not a structure within the meaning of said act. Neither can it be said that the building or repairing of an ordinary public dirt road is an extra-hazardous occupation within the meaning of said statute. If Hiler's occupation was an extra-hazardous occupation within the meaning of the statute, it was because of the fact that the commissioners were using explosive materials in dangerous quantities while blasting out the stumps and not by reason of the fact that they were building or repairing a structure. The building or repairing of a public road is not more dangerous, ordinarily, than the work of a farmer in plowing and cultivating his fields or in filling ditches to prevent the water from cutting and washing away the soil. There might be mentioned some constructions of public roads that would be extra-hazardous, such as the building of permanent roads, wherein cement mixtures are formed and placed upon the roads and where rock is crushed and placed thereon. There may be occasional structures required on the roads the building and repairing of which would be extra-hazardous within the meaning of said act, such as the building of turn-bridges, or other bridges constructed at considerable height above streams or the surface of the earth. While that is true, it is also true that the building of small bridges and culverts, of all character and sizes, could not reasonably be said to be the building of dangerous structures or an extra-hazardous occupation within the meaning of the statute. Hiler was not engaged in the building of a bridge or of a permanent road, but was simply engaged in building or repairing an ordinary dirt road, but in an extraordinary way, at the particular instant he was killed, by the use of dynamite. With the blasting work omitted, all reasonable men would say that he was not engaged in an extra-hazardous occupation. It was held by this court in *Uphoff* v. *Industrial Board,* 271 Ill. 312, that

the legislature only intended to include in said paragraph (*b*) such occupations, enterprises or businesses of the employer as may be properly considered as extra-hazardous or arduous. As is pointed out in that decision, it would be ridiculous to say that all structures are dangerous or that the building or maintaining of all structures of every particular kind is dangerous. The statute merely includes such structures the maintenance or construction of which may reasonably be said to be an extra-hazardous occupation, and the making or maintaining of an ordinary dirt road in the ordinary way cannot reasonably be said to be a dangerous or extra-hazardous occupation.

It is very clear that the road district was engaged in an enterprise, at the very moment Hiler was killed, in which explosive materials were used in dangerous quantities. For that reason it was engaged in one of the extra-hazardous occupations enumerated in said paragraph (*b.*) To hold otherwise would be to refuse to give effect to the legislative intent as expressed in said act. The township is therefore liable in this case unless the act in question is void for some reason given by plaintiff in error, or unless Hiler's employment in the hazardous occupation was only casual, as contended for by plaintiff in error.

An objection urged to the validity of the act is that at the common law there was no liability of the township in cases of this character, and that the legislature could not, and did not intend to, require a township to make an election in order to. escape the provisions of the act. The legislature had the right and power to make townships liable for damages to employees employed by its officers, whether caused by the torts of its officers or as mere incidents of the employment. In language clear and unambiguous the Workmen's Compensation act enumerates townships as employers within the meaning of that act.

It is argued that no means are provided by the act by which the township may make an election not to provide

and pay compensation under the act. This contention.is based upon the proposition that the act does not specify what officers are authorized to give notice of such an election. It is also insisted that it would be illegal to compel the tax-payers of the township to pay compensation under an elective act when they have had no choice in the matter and no opportunity of making an election. While it is true that the statute does not specify what officer or officers of a municipality may make the election in question, still it is clear that the intention of the act was that the election should be made by the officer or officers who had the power to make the employment and to direct the work. No election by the road district was contemplated by the act. Municipalities do not speak or act through the tax-payers in the matter of the employment of men or the construction of roads. The commissioners of highways are elected for that purpose, and the commissioners of highways of the road district in question had the authority, on behalf of the township, under said statute, if they so desired, to make their election not to provide and pay compensation under said act to employees engaged in labor on the public highways. They did not see fit to do so, and the township's liability must therefore be measured by the statute.

It is further contended that the act cannot be enforced against the township because it provides no means by which the money may be raised to pay the award. It is said that the Road and Bridge law only confers power upon commissioners to levy taxes for certain purposes and does not authorize the levying of taxes to pay awards of this character, and that the Workmen's Compensation act does not provide for such taxation. Section 58 of the Road and Bridge law provides that when damages have been allowed for laying out, widening, altering or vacating roads or for ditching to drain roads, the amount of such damages, not to exceed for any one year twenty cents on the $100, shall be included in the first succeeding tax levy provided for in

section 56. Section 60 provides that when damages have been allowed for roads or ditches, the commissioners of highways may draw orders on the treasurer payable only out of the tax to be levied for that purpose. The Workmen's Compensation act does not specifically authorize the levy of a tax by the authorities of any municipality to pay an award made against it under the act. The act does specifically provide that unless they elect to the contrary, townships are liable to pay compensation, under the provisions of that act, to employees engaged in any of the hazardous enterprises or occupations aforesaid. Such liability necessarily becomes a part of the damages or cost of the work on the road,—just as much so as road labor or any other damages or cost in the construction and maintenance of roads. Section 56 of the Road and Bridge law provides that the highway commissioners shall annually determine and certify the amount necessary to be raised for the proper construction, maintenance and repair of roads and bridges. The Workmen's Compensation act makes possible an additional charge in the way of damages or cost in the construction of roads and bridges, and impliedly authorizes it to be included as one item of the amount necessary to be raised for the construction, maintenance or repair of roads and bridges. Such a construction gives vitality to the act creating a liability which would be void if it were held that there were no means or power by which such a liability could be extinguished. The act, as applied to townships, does not appear to violate any constitutional provisions, so far as is pointed out by plaintiff in error. We are not concerned with the question whether or not the act is wise legislation or otherwise, but only as to its validity. We think it is a valid act and it is our duty to so declare it.

Section 5 of the Workmen's Compensation act provides: "Every person in the service of another under any contract of hire, express or implied, oral or written, * * * but not including any person whose employment is but casual

or who is not engaged in the usual course of the trade, business, profession or occupation of his employer," shall be deemed and construed to be included under the term "employee," as used in said act. It is argued by plaintiff in error that Hiler was not employed to do dynamiting work or to do anything in connection with the handling of explosives. Two experts were employed by the commissioners to do the dynamiting or blowing out of the stumps. As we have just held, the commissioners were engaged in a hazardous employment while using the dynamite in blasting the stumps. Even if Hiler's work was merely to haul away the stumps while the blasting was going on, his engagement at that time was doing a work in connection with the blasting and he was therefore engaged in a hazardous employment. It is further shown, however, that he bored some of the holes under the stumps preparatory to using the dynamite, and there can be no question but that at the moment when he was killed he was engaged in a hazardous employment. We are of the opinion, however, that his employment was but a casual employment within the meaning of the statute. From the evidence it appears that the work of dynamiting or blasting stumps had been going on but a few hours, at most, in the morning Hiler was killed, and that work necessarily could only continue for a very short time, and was to end with the blowing out of the stumps on that particular piece of road. The real work for which Hiler was employed in the beginning was to handle a team of Younger in the plowing and grading of the road. Younger had employed at least three teams on the road a part of the time and a part of the time two teams, and at the time Hiler was killed Younger only was employing one team. When Younger had three teams employed he handled one of the teams himself and had another man besides Hiler, who was employed in the same manner that Hiler was to work with a team. When the work of dynamiting was reached only one team was employed and Hiler was

expected to use that team. The work of dynamiting the stumps was a mere casual or incidental employment in connection with the matter of grading and repairing the road, and the evidence does not show that the road district had ever before used dynamite in connection with road grading at any time, and the evidence clearly shows that that work would only continue for a few hours at most. There was no expectancy, so far as the evidence shows, that dynamite would ever be again used by the district in its road work.

In the case of *Aurora Brewing Co.* v. *Industrial Board,* 277 Ill. 142, this court held that the legislature never intended an employee who was engaged for one job lasting only three or four days to be within the terms of the Workmen's Compensation act, even though the employee had been employed at irregular intervals during several previous years to perform similar work. It was further held in that case that the contract for service is the thing to be analyzed in order to determine whether it be casual, and not the nature of the service rendered. Applying the same test in this case, it is clear that Hiler's employment in the hazardous occupation in this case was a casual employment,—an employment that happened by mere chance. Several cases very similar to this one are cited in that opinion where the employment was held to be casual, notably the case of *McCarthy* v. *Norcott,* 2 B. W. C. C. 279. In that case a carpenter was employed to make repairs to a private house and after those repairs were made was engaged to cut down some trees on the ground near the house, in which latter employment he was killed. The case in hand may be likened to the employment of a farm hand by a farmer to do general farming, such as plowing, planting, hoeing and fencing, and after the employment begins the farmer concludes to employ dynamiters to blow a few stumps from his field and orders this farm hand to assist in that work by boring the holes under the stumps. Irrespective of the question whether or not farmers are exempt from the op-

eration of the Workmen's Compensation act, the employment of the farm hand by the farmer under the circumstances above set forth would be but a casual employment within the meaning of said act.

After a careful consideration of the question we have concluded that the employment of Hiler in this case in the extra-hazardous employment was not a regular or stable employment within the meaning of the statute but was merely a casual employment. Hiler was therefore not an employee within the meaning of the Workmen's Compensation act, and the Industrial Board had no jurisdiction of the case.

The judgment of the circuit court is therefore reversed.

*Judgment reversed.*

CARTER, C. J., and FARMER, J., dissenting.