(No. 11428.—Reversed and remanded.)

BAER'S EXPRESS AND STORAGE COMPANY, Plaintiff in Error, *vs.* THE INDUSTRIAL BOARD OF ILLINOIS *et al.* Defendants in Error.

*Opinion filed December 19, 1917—Rehearing denied Feb. 6, 1918.*

1. WORKMEN'S COMPENSATION—*when review in circuit court on common law writ of certiorari is not res judicata.* A review in the circuit court on the common law writ of *certiorari,* where proceedings before the Industrial Board on a claim by a father for the death of his son are quashed, is not *res judicata* of another claim by the administrator when reviewed under the statutory writ, as the circuit court in the former proceeding is only empowered to examine the record for defects on its face.

2. SAME—*what conversation with foreman as to nature of injured party's employment is admissible.* Testimony of a police officer as to a conversation he had with the employer's foreman just after an accident, in which the foreman said that the injured party was an extra man, is admissible in a proceeding for compensation, where the officer further testifies that he had been an officer in the vicinity for a number of years and knew that the party he was talking to was the foreman in charge.

3. SAME—*what does not show that employment was regular and not casual.* Where a sixteen-year-old boy, who had been seen occasionally driving a wagon for a storage company, is killed by the kick of a horse in the barns of the company on the morning of the day on which he had been promised "a steady job" by a member of the firm, the mere fact that he was found injured in the company's place of business is not proof that he had begun his regular employment and that the employment was not casual.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

MORSE IVES, and HARRY D. KNIGHT, for plaintiff in error.

BOWE & BOWE, and R. A. CAVANAGH, for defendants in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

On April 20, 1914, John Lynch was kicked or trampled by a horse in the barn of Baer's Express and Storage Company, plaintiff in error, in the city of Chicago, receiving injuries from which he died on that day. The record discloses that at the time of his death Lynch was in the sixteenth year of his age. Richard Lynch, the father of the boy and as administrator of the estate of his deceased son, alleging that his son was in the employ of plaintiff in error and received his injuries in the course of his employment, presented his claim for compensation to the Industrial Board under the Workmen's Compensation act. An award was made in favor of the claimant by the arbitrators, which was confirmed by the Industrial Board. On October 30, 1914, the plaintiff in error sued out the common law writ of *certiorari* in the circuit court of Cook county to bring up the proceedings of the Industrial Board for review, and on March 30, 1915, the court held the proceedings of the Industrial Board to be null and void and ordered that the same be quashed. On May 3, 1915, Richard Lynch, as administrator, one of the defendants in error here, filed another claim for compensation with the Industrial Board, which resulted in an award by the arbitrators amounting to $3120. This award was confirmed by the Industrial Board. The statutory writ of *certiorari* was sued out of the circuit court of Cook county under the Workmen's Compensation act as amended in 1915, the order of the Industrial Board making the award was confirmed, and the circuit court certified that the case is one proper to be reviewed by this court.

It is first contended that the decision of the circuit court on the common law writ of *certiorari* declaring the proceedings and order of the Industrial Board to be null and void is *res judicata* of the matters presented in the second proceedings before the Industrial Board. The first proceedings were brought before the circuit court for review on the common law writ of *certiorari* after the decision in *Courter* v. *Simpson Construction Co.* 264 Ill. 488, and at a time when the statute did not provide for any review of the action of the Industrial Board. The proceedings had in the circuit court upon the common law writ of *certiorari* were in nowise governed by any of the provisions of the Workmen's ·Compensation act. The court upon that review exercised only its common law power, and its judgment had no further or other effect than the ordinary judgment on review by the common law writ of *certiorari*. The court in that proceeding had no power to make any finding of fact but was only empowered to examine the record presented for any defects appearing upon its face, and its judgment that the proceedings of the Industrial Board were null and void and should be quashed amounted only to a finding that those proceedings were to be held for naught and that they became inoperative for all purposes just as though they had never been had. (*Sholty* v. *Dale Township,* 63 Ill. 209.) This left defendant in error Richard Lynch, as administrator, free to present his claim anew if he so desired. The former proceedings in the circuit court upon the common law writ of *certiorari* are not *res judicata* of the matters presented upon the second claim made before the Industrial Board.

It is next contended that there is no evidence of such employment as the statute contemplates to render an employer liable under the act, but that if there is any evidence of employment it is that of casual employment, only. The evidence relied upon by defendants in error as showing employment is vague and purely. circumstantial. It does not

appear that the deceased ever had regular employment preceding the day of his death. An older brother was engaged in the teaming business and had employed the boy irregularly to drive for him during the latter part of the year 1913 and at irregular intervals during the year 1914 up until the time of his death. William Conway, a barber who lived in the vicinity of the boy's home, testified that he last saw him on Thursday or Friday before the day he was killed, and that the last time he saw him before that he went by his place of business driving a wagon which had the words "Baer's Express" printed on the body. He also testified that on Thursday or Friday before he was killed the boy told him he was working for Baer. Frank J. Carroll testified that on Thursday or Friday before the boy was killed he saw him at Milwaukee and Division streets driving a double team for Baer, and that the wagon had Baer's name on it. He also testified that he saw him again on the morning he was killed, about ten minutes before six o'clock, within a block or two of Baer's barn and going in the direction of the barn, and that the boy stated to him that he was going to work. These are the only witnesses who testified to ever having seen him working for plaintiff in error. The boy received his injuries at the barn between eight and nine o'clock on Monday morning. His mother testified that on the previous Saturday night he came to the millinery store of his sister, where the mother was at work, and she asked him if he had been working that day; that he replied that he had been working for plaintiff in error; that she asked him for the money he had earned, and he said he had only earned a dollar and asked to be permitted to keep it, stating, "I am going to work there Monday morning steady; Mr. Baer has promised me a steady job Monday morning;" that on Sunday evening he asked her to call him at five o'clock in the morning, as he had promised Baer to go to work for him and did not want to disappoint him, and that he left the house on Monday morning at half-

past five o'clock. She also testified that the boy prior to that time had worked once in a while. The brother testified that on Sunday evening before the accident he asked the deceased to work for him on the following morning, and that "he told me he was going to work for Baer; he asked me if it was a steady job, and I told him it was only for a few days, as one of my men was going to lay off; he said Baer had promised him a steady job and he was going to work for Baer steadily that Monday morning; he said he had been working for Baer, and it would not be right for him to turn Baer down if I had a job that would only last for a few days." This testimony given by the mother and the brother as to statements made by the deceased was not objected to and its competency was in nowise questioned before the arbitrators or the Industrial Board and is not questioned here. John B. Zillinger, a police officer, testified on behalf of the claimant that he was called to plaintiff in error's place of business on April 20, 1914, after the deceased had received his injury, and removed him in an ambulance to a hospital; that when he came to the barn he had a conversation with a man whom he knew to be the foreman of the barn; that he asked the foreman how the accident happened, and the foreman told him that he had sent the boy into the stall to feed a horse which was a kicker and that he had kicked him, and that the foreman also told him that the boy was an extra man there. The testimony as to this conversation was objected to, and it is insisted that it was incompetent. The officer, who had been stationed in that vicinity for a number of years, testified that he knew this man to be the foreman for plaintiff in error and the man in charge of the barn. This made the statements of the foreman competent and admissible against plaintiff in error, and the testimony was properly admitted. In order to compute the wages which the deceased was receiving under his alleged employment it was necessary to call the brother of the deceased to testify, as one engaged in the teaming

business, that the wages paid teamsters in this line of work was $15 per week where a single horse was driven and $18 per week for driving a double team. This is the only testimony in the record on behalf of the claimant bearing upon the employment of the deceased.

On the part of plaintiff in error a number of witnesses, including the foreman of the barn, who was the only person authorized to hire teamsters, testified that the deceased had only been employed on one or two occasions previous to the time of his injury; that on the day of his injury he was not employed, but, on the contrary, had been ordered out of the barn that morning, as it was one of the rules of the company that no one who was not working there was permitted to be in the barn. As we cannot weigh the testimony and can only determine as a question of law whether there is any competent evidence in the record fairly tending to prove the fact of the deceased's employment and that he received the injury from which he died in the course of his employment, this testimony offered on behalf of plaintiff in error cannot be considered.

We are of the opinion that, giving the testimony on behalf of the claimant all the weight to which it is entitled, it is insufficient to show that there was such an employment as to render plaintiff in error liable under the Workmen's Compensation act. It cannot be seriously contended but that up until the morning of the day on which he was injured the employment of deceased by plaintiff in error was but casual. His connection with plaintiff in error clearly comes within the definition of casual employment as laid down in *Aurora Brewing Co.* v. *Industrial Board,* 277 Ill. 142. The question then remains, was there any change in the relationship between plaintiff in error and deceased on the morning of April 20, 1914, and did the deceased on that day become a regular employee of plaintiff in error, and one entitled, in case of injury, to compensation under the Workmen's Compensation act? Defendants in error rely upon the state-

282 — 4

ments made by deceased to his mother and to his brother that he had been promised "a steady job" by plaintiff in error, or by Baer, on Monday morning. As these statements went in without objection they must be regarded as competent and as truly stating the fact. The situation then is that the deceased had received a promise from plaintiff in error that he would be given "a steady job" on Monday morning. Prior to that time he had been an occasional or casual employee. It was still incumbent upon the claimant to show that this promise had been fulfilled and that deceased had entered upon the performance of his part of the contract thus entered into. The mere fact that he was found injured in plaintiff in error's place of business was not, alone, sufficient to establish that the promise on the part of plaintiff in error had not been withdrawn or that deceased had entered upon his employment under the contract. The only proof in the record having any bearing upon this question which we can consider is the testimony of the police officer, who stated that the foreman of the barn told him that he had ordered the boy to go into the stall of this horse to feed him and that the boy was an extra man. The only conclusion that can be drawn from it is that the relationship between deceased and plaintiff in error had remained unchanged and that he was still but a casual or occasional employee. As a casual employee is not entitled to compensation under the act the circuit court erred in not quashing the proceedings of the Industrial Board.

It will not be necessary for us to consider the other questions raised.

For the reasons given the judgment of the circuit court is reversed and the cause is remanded, with directions to quash the proceedings of the Industrial Board.

*Reversed and remanded, with directions.*