COUSINEAU v. BLACK.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CASUAL
EMPLOYMENT.

> In proceedings under the workmen's compensation act,
> where claimant was sent with a team by the purchaser
> of a monument, in accordance with an agreement with
> defendant that a team should be furnished by the pur-
> chaser, to haul it from the station to the cemetery, and in
> response to a question by defendant's workman, who was
> sent to erect the monument, as to whether claimant could
> help him erect it and how much he would charge, he
> replied $5 a day, and in removing the monument from
> the car claimant's thumb was injured, resulting in the
> amputation of the first phalange, *held*, that if claimant
> was employed by defendant his employment was casual
> under section 7; pt. 1, of said act (2 Comp. Laws 1915, §
> 5429), the work of erecting the monument consuming less
> than two days, and he was therefore not entitled to com-
> pensation.

Certiorari to Industrial Accident Board. Submitted
June 5, 1919. (Docket No. 50.) Decided July 17,
1919.

Charles L. Cousineau presented his claim against
Frank D. Black for injuries received in defendant's
employ. From an order awarding compensation, de-
fendant brings certiorari. Reversed, and order set
aside.

*Rodgers & Rodgers*, for appellant.

*Arthur J. Butler*, for appellee.

BROOKE, J: Certiorari to the industrial accident
board. Defendant is a monument dealer in Grand
Rapids. Through an agent, Mr. Soule, he had sold a
monument to one Mrs. Parks who was the mother-

in-law of claimant. The monument was to be set up in the cemetery at Paris, Michigan. The cemetery was four miles from Paris and it was necessary to have the monument drawn from Paris to the cemetery and set up. Mrs. Parks, the purchaser, was advised of these facts when she purchased the monument. The agent asked her whether she could send a team to haul the monument and be there herself. Upon receiving a negative answer as to her being present, the agent advised her that it would probably be more satisfactory to her to have some of her folks there. She inquired whether she must stand the expense and was informed by the agent that:

"We stand that. We pay all bills, but you get your son, for probably it would be more satisfactory to you to have some of your folks there when it is set up."

Mrs. Parks' home was in Big Rapids. She was not living with claimant and claimant was unknown in the transaction or to the defendant or his agent up to that time. On August 8, 1918, she was notified by defendant to comply with his arrangements made with defendant's agent on August 9th. She sent her own team and her son-in-law, the claimant, to Paris. She testified:

"Q. You picked out the team to send and the man to send and sent them down to Paris?
"A. I sent my own team and got the man to go with it.
"Q. The selection of the man to go with the team was made by you?
"A. Yes, for I did not know who else to send, they were all busy and the only one I thought of was my son-in-law, so I asked him to go with the team."

Defendant had shipped the monument to Paris and sent his workman, a Mr. Gillies, there to set it up. When claimant got to Paris he found Gillies there. Gillies asked claimant if he could help him do the job.

Claimant replied that he could if there was enough in it. Gillies asked him what he wanted and he replied $5 a day. This included the team of Mrs. Parks for which she expected compensation. Claimant never asked for nor received any compensation from defendant for his services. He testified:

"*Q.* Did you ever present a bill to Mr. Black for the work you did do?

"*A.* No, sir, I didn't myself.

"*Q.* Did anybody ever do it for you that you know of?

"*A.* Not for me. The man that was on the farm sent in a bill for team work. He had to run over to the graveyard and see what condition it was in and to get the team and he sent a bill in for his time and getting the team."

In removing the monument from the car and attempting to load it upon the wagon one of claimant's thumbs was crushed, resulting in the amputation of the first phalange. The erection of the monument was completed the following day. Upon the foregoing facts the board made an award of $9 per week for a period of 30 weeks.

In reviewing said award defendant asserts:

(1) Plaintiff was not an employee of the defendant at the time of the injury or at any time.

(2) The employment of plaintiff, if any existed, was but casual.

1. We find it unnecessary to pass upon the question here involved.

2. Section 7, part 1, of the workmen's compensation act (2 Comp. Laws 1915, § 5429), provides:

"Every person in the service of another under any contract of hire, express or implied, oral or written, including aliens, and also including minors who are legally permitted to work under the laws of the State who, for the purpose of this act, shall be considered

the same and have the same power to contract as adult employees, but not including any person whose employment is but casual or is not in the usual course of the trade, business, profession or occupation of his employer."

Of claimant's employment in the case at bar it may be said as it was said in the case of *Dyer* v. *Contracting Co.*, 192 Mich. 400, quoting from *Gaynor's Case*, 217 Mass. 86 (104 N. E. 339, L. R. A. 1916A, 363):

"It would be difficult to conceive of employment more nearly casual in every respect than was that of the employee in the case at bar."

Claimant if employed by defendant was employed only to assist in moving and erecting the monument, which work actually consumed less than two days. Upon this point see, also, *Hill* v. *Begg*, L. R. (1908) 2 K. B. Div. 802; *Ritchings* v. *Bryant*, 6 B. W. C. C. 183; *Cheever's Case*, 219 Mass. 244 (106 N. E. 861), and *Blood* v. *Industrial Accident Commission*, 30 Cal. App. 274 (157 Pac. 1140).

The award is set aside.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, FELLOWS, STONE, and KUHN, JJ., concurred.