Susan Herbig, Appellant, v. Walton Auto Company et al.,
Appellees.

MASTER AND SERVANT:  Workmen's Compensation Act—''Casual''
Employment.  One who is employed at irregular intervals of time,
and for no stated time or compensation, to perform ''odd jobs,'' is
a *casual* employee, within the meaning of the Workmen's Compensa-
tion Act.  So held as to one who was employed to clean out a room
just vacated by the employer.

Weaver, J., dissents.

*Appeal·from Mahaska District Court.*—Charles A. Dewey,
Judge.

April 7, 1921.

Appeal from the judgment of the district court affirming
the decision of·the industrial commissioner of Iowa in favor of
the defendant.—*Affirmed.*

*McCoy & McCoy* and *Burrell & Devitt,* for appellant.

*McNett & McNett,* for appellees.

Faville, J.—The appellant is the wife of one Charles Her-
big, deceased.  After the death of the said decedent, the appel-
lant filed an application for arbitration with the industrial
commissioner of the state, claiming compensation under the
Workmen's Compensation Act.  A committee awarded com-
pensation to the appellant, and the matter was duly prosecuted
to the industrial commissioner for review, who reversed the
award of the arbitration committee.  Thereupon, an appeal was
taken to the district court of Mahaska County, Iowa,..where the
action of the said commissioner was, by judgment of said court,
duly approved.  An appeal was prosecuted to this court, and
said cause was reversed.  *Herbig v. Walton Auto Co.,* 186 Iowa
923.  Thereupon, the cause was again tried in the said district
court of Mahaska County, Iowa, and judgment rendered in favor

of the appellees, affirming the decision of the industrial commissioner previously entered. From such judgment of the district court, this appeal is prosecuted.

The question involved in this appeal was in no way involved in the former appeal. It is not disputed that Charles Herbig met his death through an accident arising out of his employment by the Walton Auto Company. The Walton Auto Company moved its location from one building to another, and the party about to occupy the former location desired to have the upstairs room of the building cleaned out. The Auto Company had left a considerable amount of rubbish at said place, and a salesman for the Auto Company went to the home of the decedent and left word for the decedent to come to the office of the Auto Company, which he did. He reported that he was then engaged on another job, but that, as soon as he got through, he would do the work of cleaning out the room.

It was estimated that the work would have taken a day or a day and a half to complete. Nothing was said about how much he was to be paid, nor how long he was to stay. While engaged in the work, he was bringing a barrel down the stairway, and fell, striking the cement floor, from which injury death resulted.

About three weeks before this time, he had worked for the Auto Company a day and a half or two days, cleaning up the place to which the company was moving, and had been paid $3.50 therefor. The industrial commissioner found that the decedent had previously worked for the appellee at irregular and somewhat infrequent intervals, in what might be termed an "odd-job capacity." At various times, he worked two or three hours at a time, but there was no agreement with him as to when he was to work, other than to do these little jobs as the company needed him and employed him to do them.

In regard to his compensation, an officer of the Auto Company testified that he would ask the decedent what the job amounted to, and usually left it to him to fix the price; and that, during the past two years, he had never hired him a full day straight through. He testified that, in the aggregate, decedent probably worked somewhere near three weeks a year for the company in this manner.

The widow of the decedent testified that the Auto Company would send for him at different periods of time, to come down and work for a day or two.

The evidence showed that the decedent had, on one occasion, washed cars for the company; on another, had painted a truck; and on another, had helped clean out the cellar.

The foregoing is the substance of the facts, as found by the industrial commissioner. We have held that the courts will not interfere with the finding of facts made by the industrial commissioner, if the evidence is in conflict or is open to the drawing of different conclusions, even though it may be thought that the findings are erroneous. *Norton v. Day Coal Co.*, 192 Iowa —; *Pace v. Appanoose County,* 184 Iowa 498; *Griffith v. Cole,* 183 Iowa 415; *Pierce v. Bekins V. & S. Co.,* 185 Iowa 1346.

The question, therefore, for our consideration is whether or not, under these facts, the conclusion of the industrial commissioner and of the district court, that the employment of the decedent was casual and within the exception of the Workmen's Compensation Act, was correct. As originally drawn, the Workmen's Compensation Act of this state, Code Supplement, 1913, Section 2477-m16, in describing those subject to the act, contained this exception:

"Except a person whose employment is purely casual and not for the purpose of the employer's trade or business or those engaged in clerical work only."

The thirty-seventh general assembly, by Chapter 270, Section 10, amended this clause by striking out the word "and" and inserting in lieu thereof the word "or." This made a very vital and substantial change in the meaning of the act. As now written, the law excepts persons whose employment is "purely casual," and also excepts those whose employment is "not for the purpose of the employer's trade or business." Under our statute, as it is now worded, the employment may be for the purpose of the employer's trade or business, but, if it is "purely casual," the law does not apply. On the other hand, if the employment is entirely outside of the purpose of the employer's trade or business, although it may not be casual, it does not come under the statute. This distinction must be borne in mind in examining the authorities. As originally enacted, our statute

was similar to the British act. A number of the states still follow the language of that act substantially; others, by original enactment or amendment, conform substantially to our present law.

The reasons for the exception in the statute are obvious. The employer is required to insure his liability under the act, under supervision of the state department of insurance. It evidently was the intent of the legislature that this was not required for employees whose employment was "purely casual," nor for such employees as were not employed "for the purpose of the employer's trade or business."

We had occasion to consider the question of the construction of the term "whose employment is purely casual" in the recent case of *Bedard v. Sweinhart*, 186 Iowa 655. In that case, the defendant employed the plaintiff to make some repairs in the way of shingling, and, while he was engaged on that job, requested him to fix a screen door and cellar window at another place. The agreement as to compensation for the shingling was that he was to receive $2.00 for each 1,000 shingles laid, and he did $5.00 worth of work in 4 days. While engaged in this work, he discovered that some cement was needed on the chimney of the house he.had been shingling, and proposed to his employer to get the cement, and he would put it on for nothing. This was done, and, while making the repairs, he received the injury complained of. We said:

"If this was not a 'casual employment,' it would be hard to apply the term to any employment. The word 'casual' is defined in the dictionaries as 'coming without regularity; occasional; incidental;' 'coming at uncertain times or without regularity, in distinction from stated or regular;' 'a laborer or an artisan employed only irregularly.' See Webster and Century Dictionaries."

Our holding is in line with that of other states that have a similar statute. The Massachusetts statute is like our present statute. In *Gaynor's Case*, 217 Mass. 86 (104 N. E. 339), the Supreme Court of Massachusetts considered the statute of that state, and pointed out the distinction between it and the English act. In that case, a caterer employed a waiter for a single day or occasion at a fixed wage per day, together with transporta-

tion to and from the place of employment. The custom of the catering business was to engage waiters in this manner. The court said:

"The crucial words to be construed are those contained in the exception out of the class of employees of 'one whose employment is but casual.' The word 'casual' is in common use. Its ordinary signification, as shown by the lexicographers, is something which comes without regularity, and is occasional and incidental. Its meaning may be more clearly understood by referring to its antonyms, which are 'regular,' 'systematic,' 'periodic,' and 'certain.' "

It was held that the employment was "but casual."

In *Blood v. Industrial Acc. Com.*, 30 Cal. App. 274 (157 Pac. 1140), it appeared that Blood employed a house painter to apply two coats of paint to his house. Blood was to furnish the painting material, and pay the employee $3.50 a day. The employment was not for any definite period of time, but would reasonably have been done within two weeks. It was held that the employment was casual; that it was a mere occasional and incidental contract, not constituted or connected with any regular, systematic, periodic, or certain business.

In *Bridger v. Lincoln F. & F. Co.*, (Neb.) 179 N. W. 1020, the following facts appeared:

"Plaintiff began to unload a car of coal for defendant, February 21, 1920, and finished the task the next day. He began to unload another car, February 23, 1920, and was injured the following day, before he had removed all of the coal. For these services he was paid $20 by check of defendant, being 25 cents a ton. About a week earlier, plaintiff had unloaded a car of coal for defendant in the same yards. During a year's time previously, he had unloaded three or four cars, and received 25 cents a ton. He was entitled to his pay when he unloaded a car, and could then get it, if he could find defendant's manager at the time. Plaintiff in each instance was employed to unload a particular car of coal. Between jobs, he sometimes stayed around defendant's yards; and, when a car of coal came in, he asked for the unloading, was told the price, and performed the service; but during some of the intervals he had worked for others."

It was held that the workman was within the exception to the act.

It is unnecessary to extend this opinion by quoting from the authorities of the various states at length, but, as sustaining the general rules and definitions above announced, see *Aurora Brewing Co. v. Industrial Board,* 277 Ill. 142 (115 N. E. 207); *Cheevers' Case,* 219 Mass. 244 (106 N. E. 861); *Baer's Exp. & Stor. Co. v. Industrial Board,* 282 Ill. 44 (118 N. E. 412); *Thede Bros. v. Industrial Commission,* 285 Ill. 483 (121 N. E. 172); *Cousineau v. Black,* 206 Mich. 479 (173 N. W. 203); *Maryland Cas. Co. v. Pillsbury,* 172 Cal. 748 (158 Pac. 1031); *McLaughlin v. Industrial Board,* 281 Ill. 100 (117 N. E. 819); *Chicago G. W. R. Co. v. Industrial Commission,* 284 Ill. 573 (120 N. E. 508); *Western Union Tel. Co. v. Hickman,* 248 Fed. 899.

Counsel for appellant cite and place great reliance upon the case of *Sabella v. Brazileiro,* 86 N. J. L. 505 (91 Atl. 1032), decided by the Supreme Court of New Jersey. In that case, the evidence showed that the deceased was a longshoreman, and had frequently been employed by the prosecutor to assist in loading and unloading its ship, which sailed between New York and the republic of Brazil; that all longshoremen are paid by the hour for the term of service; that the foreman told deceased in Brooklyn to go to Jersey City, as they had a ship in dock; and that deceased went there, was set to work, and injured. The court said:

"While this class of work was not constant, depending upon there being a ship of the prosecutor in port, it appears that the deceased was frequently called upon by the prosecutors to serve them in this particular character of work, being one of a class of stevedores ready to respond when called."

The court held that the employment was not casual, within the meaning of the New Jersey statute. The court further said:

"The ordinary meaning of the word 'casual' is something which happens by chance, and an employment is not casual,— that is, arising through accident or chance,—where one is employed to do a particular part of a service recurring somewhat regularly, with the fair expectation of its continuance for a reasonable period."

There is a very obvious distinction between a person employed by a shipowner in the regular business of loading and unloading the employer's ship and one who is incidentally hired to sweep out the rooms of a building that has been vacated by a company in the automobile business.

*Dyer v. Black Mas. & Con. Co.*, 192 Mich. 400 (158 N. W. 959), is relied upon by appellant. In that case, the claimant was engaged in doing the glazing on a building, under written contract with the principal contractor, who, finding it necessary to have some person assist and look after the delivering of the glass at the building and see to the unloading of the same, arranged with the claimant to do this work, from time to time, as the glass arrived, for which he was to and did receive pay. As the building progressed, the glass was, in fact, delivered, from time to time, and it became necessary, in the interest of the business of the general contractor, to have the delivery of the glass looked after and supervised, and claimant was employed for that purpose. It was sure to occur and recur in the operation of the job. The court said:

"There was an element of certainty in the work, recurring at times which, though they could not be fixed definitely, yet were fixed generally by the agreement to look after and assist in unloading the glass as it arrived, from time to time."

This case is clearly distinguishable from the case at bar.

Appellant relies on *Holmen Creamery Assn. v. Industrial Com.*, 167 Wis. 470 (167 N. W. 808). In that case, a mason was employed to repair the creamery building owned and operated by the Creamery Association. He had previously worked for the Creamery Company, and had built part of the building. He was always hired, especially whenever the company had repair work to do, and was paid by the day or hour. The court said:

"Hence, an employment that is only occasional, or comes at certain times or at irregular intervals, and whose happening cannot be reasonably anticipated as certain or likely to occur or to become necessary or desirable, is but a casual employment, within the meaning of the statute. It is one that arises occasionally or incidentally, and is not a usual concomitant of the business, trade, or profession of the employer."

The court held that it was apparent that the Creamery Company required a building for its business, and that such building needed repair, from time to time. The claimant had several times repaired this building. The court held that the repairs were, therefore, a part of the employer's business, to be anticipated and met when necessity or convenience dictated, and were an essential and integral part of the business.

Appellant cites *Consumers Mut. Oil Prod. Co. v. Industrial Com.*, 289 Ill. 423 (124 N. E. 608). In that case, the claimant, at the time of his employment, was told that there would probably be two or three weeks' work, and maybe longer—there was no more definite time fixed for employment. He had worked for the same employer before, and was employed to assist in pulling certain wells and repairing certain pump jacks, and, while so employed, was injured. The court held that the employment was casual, and said:

"Where the employment for one job cannot be characterized as permanent or periodically regular, but occurs by chance, or with the intention and understanding on the part of both employer and employee that it shall not be continuous, it is casual. * * * The work he was to assist in doing was a particular and certain piece of work, which both he and his employer knew would require but a short time. There was nothing in the contract of employment nor in the relations of these parties, then or prior to that time, shown by the evidence which would indicate that such employment was to be either continuous or recurring."

We approve this declaration, and apply it to the instant case.

Other cases cited by counsel for appellant have been examined by us, but are not determinative of the question involved. We are clearly of the opinion that the decedent, under the circumstances disclosed in this record, was engaged in an employment that was casual, and that there was no liability under the Workmen's Compensation Act. The finding of the industrial commissioner and of the district court was correct.

In view of our holding on this question, it is unnecessary for us to pass on other matters argued by counsel. It follows that the judgment of the district court must be, and the same is, —*Affirmed.*

Evans, C. J., Preston, Stevens, Arthur, and De Graff, JJ., concur.

Weaver, J., dissents.