(No. 12074.—Judgment reversed.)

The Chicago Great Western Railroad Company, Plaintiff in Error, *vs.* The Industrial Commission *et al.*— (The Standard Trust and Savings Bank, Admr., Defendant in Error.)

*Opinion filed October 21, 1918.*

1. Workmen's compensation—*what is meant by "casual" employment.* Workmen must be regarded as engaged in "casual" employment, within the meaning of the Workmen's Compensation act, when they are employed only occasionally, irregularly or incidentally as distinguished from those who are employed regularly and continuously.

2. Same—*when employment is casual.* The employment by a railroad company of structural ironworkers for a few days' work on a driveway being constructed from a public viaduct to the company's freight house is a casual employment within the meaning of the Workmen's Compensation act.

Writ of Error to the Circuit Court of Cook county; the Hon. Oscar M. Torrison, Judge, presiding.

Winston, Strawn & Shaw, (Silas H. Strawn, Ralph M. Shaw, John D. Black, and Charles J. McFadden, of counsel,) for plaintiff in error.

Frederick A. Brown, and Irving Wesley Baker, for defendant in error.

Mr. Justice Carter delivered the opinion of the court:

Christ Anderson filed an application with the Industrial Board on April 10, 1917, for adjustment of a claim against the plaintiff in error railroad company for injuries alleged to have been sustained by him while in the employ of that company, on March 21, 1917, by falling or being knocked from a swinging scaffold. Evidence was heard by an arbitrator, who found in favor of the applicant, and an award of damages was made. June 20, 1917, after the application was filed with the Industrial Board, Anderson

died, and the Standard Trust and Savings Bank was appointed administrator, in whose name the subsequent proceedings were prosecuted. After the finding by the arbitrator, on petition for review the Industrial Board found in favor of the administrator and awarded weekly payments aggregating $3500. The circuit court on *certiorari* affirmed the award of the Industrial Board, and the circuit judge having certified that the case was one which should be heard by this court, it was brought here by writ of error.

The accident occurred near the corner of Polk and Franklin streets, in Chicago. Polk street runs east and west and crosses Franklin street at right angles by means of a viaduct. About forty-five feet northwest of the viaduct is plaintiff in error's Harrison street freight house. Previous to March 21, 1917, plaintiff in error began to build a drive or runway from this viaduct to the second floor of the freight house, then under process of construction. In building this runway it was necessary that certain structural ironworkers' services be used. Regular men employed by the railroad began the work, but after a conference with the business agent of the Structural Ironworkers' Union four union men from the headquarters of said union were sent over to continue the work, Christ Anderson being one of the four, and one of them, Carmody, being put in charge of the work as foreman. This runway appears to have been a part of the general scheme for the freight house that was being built, so that the Washburn-Crosby Company could drive from Polk street to and from the second floor of the freight house with loads of flour. On the day of the accident Anderson was working on said runway when a horse and wagon being driven beneath the viaduct by an employee of the Heco Envelope Company struck the scaffold, causing Anderson to fall twelve or fourteen feet to the pavement and to receive injuries from which he died about thirteen weeks after. The details of the accident or the extent of the injuries are not in dispute. The only question raised

on this hearing is whether or not the employment of the deceased was casual, and therefore whether or not he could recover under the provisions of the Workmen's Compensation act which was in force at the time of the accident.

The evidence tends to show that structural ironworkers are a part of the regular force of employees of various railroads; that some of these ironworkers regularly employed by plaintiff in error started to do this work, when a change was made by calling in the four workmen as above stated. The question as to whether these new men were union or non-union is, as suggested by counsel, not material, but the facts as to the change of the workmen during the construction of this runway are only important in their bearing on the character of the contract entered into between the railroad company and Christ Anderson. We judge from the evidence in the record that it is not disputed that railroads now and then call in structural ironworkers from the union headquarters to do work of this character. There is proof in the record, however, that plaintiff in error had never before called Anderson or his fellow-employees to do this character of work for it. The evidence shows that Anderson had been an experienced structural ironworker for many years, and, so far as the record shows, this is the only employment he ever had from the plaintiff in error company. The particular job of doing structural ironwork on this runway lasted three or four days after the four union men came to do the work. Apparently two of the four quit before the job was completed and were paid for what work they had done and other union men were sent from union headquarters to take their places.

Counsel for defendant in error argues that there is nothing to show that Anderson may not have begun a work which was to give him permanent employment with the railroad company as a structural ironworker. There is nothing in this record that in any way tends to uphold this argument. The evidence all justifies the conclusion that he was

only employed for that particular job, as were the other three men who came at the same time. The work of building this runway was a part of the regular work for the conduct of the railroad's business. The putting on of these union ironworkers for this temporary work only bears on the character of the contract of employment. The character of the work was fixed by the fact that it was a part of the railroad work. The character of the contract of employment, as to whether it was casual or not, was fixed by the contract of hiring,—that is, the contract could have been of such a nature that Anderson would have been a regular employee of the railroad as a structural ironworker, or it could have been of such a nature that he was only a casual employee for this particular job,—and the question to be determined here is which kind of contract was, in fact, made. The fact that the man making the contract is union or non-union is wholly incidental to the question of what the real contract was. The burden of proof is upon the claimant to prove the employment and injury, but the burden is on the plaintiff in error to prove that the employment is but casual. *Peoria Terminal Co.* v. *Industrial Board,* 279 Ill. 352; *Victor Chemical Works* v. *Industrial Board,* 274 id. 11.

This court has had occasion several times to discuss the meaning of the word "casual," as used in the Workmen's Compensation act with reference to the character of the employment. In *Baer's Express Co.* v. *Industrial Board,* 282 Ill. 44, a workman had been employed prior to the accident at irregular times by the express company. He had been promised regular employment and reported to work at the stables Monday morning about six o'clock. Three hours later he was injured in the express company's barn. The opinion says (p. 49) : "We are of the opinion that, giving the testimony on behalf of the claimant all the weight to which it is entitled, it is insufficient to show that there was such an employment as to render plaintiff in error liable un-

der the Workmen's Compensation act. It cannot be seriously contended but that up until the morning of the day on which he was injured the employment of the deceased by plaintiff in error was but casual. * * * The only conclusion that can be drawn from it is that the relationship between deceased and plaintiff in error had remained unchanged and that he was still but a casual or occasional employee."

In *McLaughlin* v. *Industrial Board,* 281 Ill. 100, a workman was injured while blasting stumps in connection with work on a highway. The opinion says (p. 108) : "We are of the opinion, however, that his employment was but a casual employment within the meaning of the statute. From the evidence it appears that the work of dynamiting or blasting stumps had been going on but a few hours, at most, in the morning Hiler was killed, and that work necessarily could only continue for a very short time, and was to end with the blowing out of the stumps on that particular piece of road. * * * The employment of Hiler in this case * * * was not a regular or stable employment within the meaning of the statute, but was merely a casual employment."

In *In re Gaynor,* 217 Mass. 86, a waiter employed by a caterer to serve at a banquet was injured while preparing for the banquet. He had never been employed before that time by that caterer. The custom of the catering business was that such banquets were served by waiters secured for each particular occasion. The Massachusetts Supreme Court said in its opinion: "It would be difficult to conceive of employment more nearly casual in every respect than was that of the employee in the case at bar. The engagement was for a single day and for one occasion only. * * * The relation between the waiter and the caterer had no connection of any sort with any events in the past. Each was entirely free to make other arrangements for the future, untrammeled by any express or implied expectations of further employment. The employment was not periodic and regular. * * * It was in the course of the regular

284 – 37

business of the employer. But under our act that is an immaterial circumstance, in view of the other fact that the employment was 'but casual.' The conclusion seems irresistible that the employment of the deceased was 'but casual' within the meaning of those words in our act." The Massachusetts act under which this opinion was construed is identical with the Illinois act so far as it relates to casual employment.

*In re Cheevers,* 219 Mass. 244, was a case brought under the Workmen's Compensation act of Massachusetts. One Pierce owned a coal yard and conducted a retail coal business. At various times in 1911, 1912 and 1913 he employed Cheevers to deliver coal with Cheevers' wagon at five dollars a day for himself and team, he being hired for this general work for no fixed duration of time and for no specific job. The Massachusetts Supreme Court in discussing this accident said: "The scheme created by the Workmen's Compensation act is a scheme of insurance in which the premiums to be paid by the employer are based upon the wages paid by him to his employees. It may have been thought impracticable to work out a scheme of insurance if persons who are only occasionally employed are to be included among those insured," and the court held Cheevers' employment in the case was casual and therefore that he could not recover.

In *Blood* v. *Industrial Accident Com.* 30 Cal. App. 274, a house painter was employed to apply two coats of paint to a certain building, the employer furnishing the material. The employment was not for any definite period of time, but the evidence showed that it would reasonably have been done within two weeks. During the first day the employee was accidentally injured. The California court said: "It is noted that the ordinary signification of the word 'casual,' as shown by the lexicographers, is something which comes without regularity and is occasional and incidental; that its meaning may be more clearly under-

stood by referring to its antonyms, which are 'regular,' 'systematic,' 'periodic' and 'certain.' Tested by this distinction, the contract of employment of Heck by the petitioner to paint the house was casual. It was a mere occasional and incidental contract, not constituting or connecting with any regular, systematic, periodic or certain business."

While it is true, as stated by this court in *Aurora Brewing Co.* v. *Industrial Board,* 277 Ill. 142, on page 145, that "each case * * * must be decided quite largely upon its special facts," cases may be valuable in the principles of law stated and in showing how those principles are applied to a certain state of facts. The legislature certainly intended, when the act here in question was passed, to give some meaning to "casual," and we assume from a reading of the statute that it intended to give the ordinary, common meaning,—that is, workmen are engaged in casual employment when they are employed only "occasionally," "irregularly" or "incidentally," as distinguishing them from those employed regularly and continuously. While it is true that the legislature, since this accident occurred, has amended the Workmen's Compensation act with reference to casual employment, doubtless because of the construction given by this court to the statute here under consideration in *Aurora Brewing Co.* v. *Industrial Board, supra,* still we must construe the statute in accordance with its spirit and intent and as worded when this accident occurred. In view of the reasoning of this court in the cases already cited and the other decisions mentioned, in our judgment it must be held that Anderson's employment was but casual and that therefore there can be no recovery under the Workmen's Compensation act.

The Industrial Board erred in holding that recovery could be had under the Workmen's Compensation act for the injury to the deceased, as did also the circuit court. The judgment of the circuit court is therefore reversed.

*Judgment reversed.*