(No. 12488.—Judgment reversed.)

THE DIAMOND LIVERY, Plaintiff in Error, *vs.* THE INDUS-TRIAL COMMISSION *et al.*—(CHARLES E. POOLE, Defendant in Error.)

*Opinion filed October 27, 1919.*

WORKMEN'S COMPENSATION—*when employment is casual.* Occasional, irregular or incidental employment is a "casual employment" as that term is used in section 5 of the Workmen's Compensation act of 1913, and a person who stays at a livery stable and is occasionally employed to make trips when regular employees are not available, for which service he receives a per cent of the money earned on the trip, but who is not on the pay-roll, is engaged in a casual employment.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. OSCAR M. TORRISON, Judge, presiding.

ALBERT N. POWELL, for plaintiff in error.

CHARLES C. SPENCER, for defendant in error.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This is a writ of error sued out by the Diamond Livery, plaintiff in error, to review a judgment of the circuit court of Cook county affirming an award of the State In-

dustrial Commission in favor of Charles E. Poole, the circuit court having certified that the cause is one proper to be reviewed by this court.

Plaintiff in error had for many years operated a business in Chicago where it boarded the horses and sheltered the vehicles owned and used by Carson, Pirie, Scott & Co., Marshall Field & Co., Siegel, Cooper & Co., and many other firms of the city of Chicago. It furnished all accommodations, such as feeding, stalling and cleaning the horses, cleaning the wagons and harness, hitching and unhitching the horses and storing the wagons. The owners of the horses and wagons employed their own drivers, delivery boys and other helpers. The several firms paid the plaintiff in error for this service. Twelve or fifteen men were employed by plaintiff in error and were carried on the pay-roll. In addition to this boarding service the plaintiff in error owned some horses which it rented to merchants for $1.50 a day for use on wagons owned by the merchant and driven by the merchant's employee. When these horses were not thus engaged they were sometimes used by the plaintiff in error in filling calls for funerals, parties or other trip service, and when so employed the plaintiff in error furnished the carriage and the driver and made a charge for each trip. There were two regular employees at the barn who made these trips when there was a call for a carriage. If for any reason one of these men could not go or both were busy with calls, arrangements were made with someone to make the trip, and this person was paid twenty-five per cent of the money earned on the trip. In order to avail himself of the opportunity to make these extra trips, Charles E. Poole, defendant in error, stayed around the barn most of his time. He was permitted to sleep in the barn and provided himself with sleeping accommodations wherever convenient,—a part of the time in the harness room and a part of the time in one of the stalls. He was not on the pay-roll and was not a regular employee of the

plaintiff in error. Since August, 1912, Poole had availed himself of the privilege of sleeping in the barn, and by keeping himself in close touch with the barn had been able to keep reasonably regularly employed by making these special trips and by doing other odd jobs about the barn. When the regular drivers were not available Poole was given the opportunity to make the trip, and if he desired he made the trip and was paid at the end of the trip twenty-five per cent of the money earned on the trip. If for any reason the regular employees of the plaintiff in error were not able to keep the premises or the horses clean, the foreman would say to Poole that he would give him fifty cents for sweeping the floor, or would give him a quarter for cleaning a horse and hitching it up, or something to that effect. If Poole wanted to perform this service he would do so, and would be paid as soon as that service had been performed. Although he remained around the premises most of the time he was not required and was under no obligation to plaintiff in error to perform these services if he was not so disposed. He could come and go as he pleased. If a call came to the barn after twelve o'clock at night, while he was sleeping at the barn, and there was no other employee at the barn, he would answer the call, and if there was a request for service he would make the trip and the next morning would be paid his twenty-five per cent of the money earned on that trip. September 10, 1914, Poole was about the barn throughout the day. He went on an individual errand for one of the employees of plaintiff in error and was paid by that employee from said employee's individual funds a small sum for the service. At the time he was injured he was walking across the floor of the barn with a duster in his hand and was going to dust the top of the carriage which he sometimes used in making his trips. He collided with Hugo Claire, a delivery boy in the employ of Carson, Pirie, Scott & Co. and they fell to the floor, and in the fall Poole's hip was broken.

289 — 38

Plaintiff in error contends that Poole was not an employee of it in the sense the term "employee" is used in the Workmen's Compensation act, and contends that such employment as Poole had with it at the time he was injured was but casual. Section 5 of that act provided at the time of this injury and at the time of the hearing before the Industrial Commission, that the term "employee," as used in the act, shall be construed to mean "every person in the service of another under any contract of hire, express or implied, oral or written, * * * but not including any person whose employment is but casual." In *Aurora Brewing Co.* v. *Industrial Board,* 277 Ill. 142, we collected authorities and discussed at length what was meant by "casual employment," as that term was used in the Workmen's Compensation act. We there held that occasional, irregular or incidental employment was a casual employment. In *McLaughlin* v. *Industrial Board,* 281 Ill. 100, a laborer who was assisting in the making of a dirt road, and who was employed for plowing and grading the road and hauling stumps off the road after they had been pulled or blown out and to do any other such task as was assigned to him by the road commissioner, was asked by the road commissioner to assist some experts who were dynamiting or blowing out stumps. It was held that inasmuch as this particular employment took but a few minutes of time, and inasmuch as it was not a regular or stable employment within the meaning of the statute, it was merely a casual employment. In *Baer's Express Co.* v. *Industrial Board,* 282 Ill. 44, a boy sixteen years old, who had been seen occasionally driving a wagon for the express company and who was killed by the kick of a horse in the barns of the company on the morning of the day on which he had been promised a steady job by a member of the firm, was held to be a casual employee. In *Chicago Great Western Railroad Co.* v. *Industrial Com.* 284 Ill. 573, a structural iron-worker was employed for a few days' work on a driveway

being constructed from a public viaduct to the company's freight house, and it was there held that his employment must be regarded as casual because it was occasional, irregular and incidental as distinguished from regular and continuous. In *Thede Bros.* v. *Industrial Com.* 285 Ill. 483, the employer had a number of regular men whom it used in its transfer and storage business, and when extra help was needed for heavy work it picked up this extra help as it was needed. One Marsh was so employed to help move a heavy furnace. They did not get through with the job the first day but Marsh was paid for his day's work. He came back the next morning and the moving of the furnace was completed about nine o'clock. He was then told to go with the teamster and they started moving a washing machine, in which operation his hands were caught in a pulley and injured. It was held that inasmuch as he was employed for no definite time and did not intend to become a regular employee and the employer did not intend him to become a regular employee, and inasmuch as he was not on the regular pay-roll, his employment was casual.

The conclusion reached on the question of casual employment renders it unnecessary for us to consider whether plaintiff in error was engaged in a business, occupation or enterprise enumerated in section 3 of the Workmen's Compensation act as it existed at the time of this injury or whether the accident arose out of and in the course of the employment.

The circuit court erred in entering judgment affirming the decision of the Industrial Commission, because, as we view it, no recovery could be had under the Workmen's Compensation act for the injury to the defendant in error, Poole. The judgment of the circuit court is therefore reversed.                                    *Judgment reversed.*