No. 9751.

INDUSTRIAL COMMISSION OF COLORADO *v.* FUNK.

1. WORKMAN'S COMPENSATION—*Disobedience of Orders or Rules—Effect.* The transgression of an order or prohibition which deals only with the workman's conduct within the sphere of his employment will not prevent the recovery of compensation.

Otherwise where the workman disobeys a rule or order which limits the sphere of employment.

The workman was directed not to work under an overhanging bank without first caving it down. *Held* the order was one only dealing with the workman's conduct within the sphere of his employment.

2. ——*Violation of a Rule Prescribed for the Workman's Safety*, has the effect to reduce the compensation 50 per cent.

3. ——*Casual Employment.* That the servant is not employed for any specified time does not render his employment casual under sec. 4 (d) II of the Workmen's Compensation Act (Laws 1915, c. 179).

A workman mining silica for use in the manufacture of brick at the works of his employer, and working with regularity. *Held* not a casual employee.

So that the injury occurs shortly after the employee begins work.

4. ——*Number of Employees—Statute Construed.* That less than four men are employed in extracting silica for use in a brick yard conducted by their employer, where there are many employes, does not bring the case within sec. 4 (d) III of the act.

The manufacture and procuring the material for it constitute but one business.

*Error to the Yuma District Court, Hon. L. C. Stephenson, Judge.*

Hon. VICTOR E. KEYES, Attorney General; Mr. JOHN S. FINE, Assistant; Mr. H. E. CURRAN, for plaintiffs in error.

Mr. M. M. BULKELEY, Mr. WAYNE C. WILLIAMS for defendant in error.

Mr. Justice Allen delivered the opinion of the Court.

THIS cause is one brought and prosecuted under the provisions of the Workmen's Compensation Act. On June 14, 1916, Sam Gaines and William Gaines, father and son, respectively, were, as the result of an accident, killed while in the employ of Martin D. Funk, doing business as The Wray Brick Company. On August 26, 1918, the Industrial Commission, after due proceedings and a hearing, awarded certain compensation to one Fannie Gaines, the widow of Sam Gaines, deceased, as his dependent during his life time. Thereafter Martin D. Funk, the employer and who had been ordered to pay such compensation, filed a petition for rehearing, and the same was, on September 30, 1918, denied by the Commission. On November 18,

1918, Funk commenced an action in the District Court of Yuma County to set aside the order and award of the Commission, and on November 5, 1919 the District Court set aside the order and award. The Industrial Commission, and Fannie Gaines, as claimant of compensation, bring the cause here for review.

The record presents three main questions of law for our determination, namely:

1. Did the accident, which caused the death of Sam Gaines and William Gaines, arise out of and in the course of the employment of the decedents?

2. Was Sam Gaines, at the time of the accident, an employee, within the meaning of the Workmen's Compensation Act, who or whose dependents would be entitled to compensation under the Act?

3. Was Martin D. Funk such an employer as to be or to become subject to the provisions of the Workmen's Compensation Act?

It is plain from the provisions of the Workmen's Compensation Act, and it is not controverted, that if any one or more of the foregoing questions must be answered in the negative, no compensation was allowable to any one, and the order and award of the Commission cannot be upheld. The District Court set aside the order and award on grounds which are the equivalent of answering the first two questions in the negative.

Relevant to the first question, the findings of the Commission, which are supported by the evidence, are as follows: "That at the date of their death, they (Sam Gaines and William Gaines) were employed by the said Martin D. Funk, doing business as The Wray Brick Company, in mining silica from an open pit or bank then owned and operated by the said Martin D. Funk in connection with his brick business in the City of Wray, Colorado. That while so employed and engaged in mining silica under the bank, the top caved off, completely covering the said William and Sam Gaines and causing almost instant death. * * * That from the evidence produced at said hear-

ing the Commission finds that the said Sam Gaines was guilty of violating a reasonable safety rule, in this: That the said Martin D. Funk has specifically ordered and directed that the said Sam and William Gaines were not to work under the overhanging silica bank without first causing the same to be caved off. That the said Sam and William Gaines had not caved off the top of the silica bank as directed and that in accordance with the Workmen's Compensation Law,, compensation or death benefits should therefore be reduced 50%."

Whether it is to be held that the accident arose out of and in the course of the employment, depends upon the consequences which we find result from the disobedience of the order or direction, mentioned in the findings. In 1 Honnold on Workmen's Compensation, p. 390, sec. 113, the author says: "Disobedience to an order or breach of a rule is not of itself sufficient to disentitle a workman to compensation, so long as he does not go outside the sphere of his employment. There are prohibitions which limit the sphere of employment, and prohibitions which deal only with conduct within such sphere. A transgression of a prohibition of the latter class leaves the sphere of employment where it was, and consequently will not prevent recovery of compensation. A transgression of the former class carries with it the result that the man has gone outside the sphere." In the instant case, it should be noted that the Commission found that the workman was directed "not to work under the overhanging silica bank without first causing the same to be caved off." It is thus seen that the workman was not prohibited from working at all on the silica bank in question, but was instructed to cave off the top before commencing the work of mining at that particular place. The order related to the manner in which that particular section of the silica bank was to be worked. The order, therefore, dealt only with the conduct of the workman within his sphere of employment, **and did not** limit such sphere. Under **the** rule above quoted from Honnold, which we regard as

correct, the violation of the order or direction involved in this case, did not make the accident one *not* arising out of and in the course of the employment, and it cannot, therefore, be held that the deceased were not within the scope of their employment at the time of the accident.

The Commission regarded the disobedience of the order as a violation of "a reasonable safety rule," and for that reason reduced the compensation 50%, under section 61 of the Workmen's Compensation Act of 1915, which provides for such action "where injury results from the employee's wilful failure to obey any reasonable rule adopted by the employer for the safety of the employee." We agree with the commission's conclusion that the order in question was a safety rule, within the meaning of the Act. With reference to the direction, the employer testified: "I told them that the bank was safe here and here (pointing) and here not to take any more out unless he caved it down from the top; while it might stand if left alone, if they dug any further, it might cave on them." It is also plain from the section last cited (Sec. 61, chapter 10, 179 S. L. 1915) that a wilful violation of a safety rule does not defeat compensation, but only reduces it fifty per cent.

The defendant in error, the employer and respondent in the proceedings before the Commission, contends, with reference to the second question presented in this case, that Sam Gaines was not such an employee as would be entitled to compensation under the Act, or whose dependents would be so entitled. In this connection it is insisted that William and Sam Gaines were "casual" employees, and reliance is placed upon Section 4 (e) II of the Act, where it is provided that the term "employee" shall not include "any person whose employment is but casual."

The evidence shows that the employer was in the business of manufacturing brick. The silica bed upon which the employees worked was operated in connection with such business, and for the purpose, at least among others, of furnishing material used in the manufacture of brick. The work of Sam and William Gaines, performed at the

silica mine, was therefore in the usual course of the business of the employer. Such service was not merely incidental to the business, nor occasional. The mining of silica was carried on continuously, or at least with regularity. The employees at the mine were employed to do a particular part of a service recurring somewhat regularly, with the fair expectation of the continuance for a reasonable time. It does not render an employment casual that it is not for any specified length of time, or that the injury occurs shortly after the employee begins work. Under the facts above stated, and the principles announced, we conclude that Sam and William Gaines were not casual employees, within the meaning of the statute. Sec. 1 Honnold on Workmen's Compensation, section 62, pp. 199 et seq., and cases cited in the notes; also section 43, p. 51, Corpus Juris treatise on Workmen's Compensation Acts, and notes.

As to the third main question, hereinbefore referred to in this opinion, the contention of the employer, defendant in error here, is to the effect that he, Martin D. Funk, was not, at the time of the accident, such an employer as is subject, without his election, to the provisions of the Workmen's Compensation Act. In this connection, (defendant in error relies upon section 4 (d) III of the Act, which reads as follows: "III. This act is not intended to apply to employers of private, domestic servants or farm or ranch labor; nor to employers who employ less than four employees regularly in the same business, or in or about the same place of employment; *Provided,* That any such employer may elect to accept the provisions of this act, in the manner provided herein, in which event he and his employees shall be subject to and entitled to all the provisions of this act." The particular part of this section upon which the defendant in error specially relies, is the expression, "in or about the same place of employment," and it is argued that the employer in the instant case is not subject to the act, because less than four persons were engaged in performing services at the pit or

bank of silica, where Sam and William Gaines were working; in other words, it is contended that the act does not apply to the defendant in error simply because he employed less than four persons at the particular place of employment where the accident occurred.

Under the construction which the defendant in error apparently places upon the Workmen's Compensation Act, and particularly section 4 (d) III thereof, an employer would be subject to the act only as to those employees who work at a place where four or more persons are working under employment, and would not be subject to the provisions of the act as to those employees who perform services at some particular place, appurtenant to the employer's business, at which less than four persons are working. Such a construction of the statute cannot be upheld. It readily appears from other sections of the act, that if an employer is subject to its provisions, he is subject as to all employees engaged in a common employment, even if a particular group of less than four of them are performing services at some one place. It may be that section 4 (d) III, considered literally, to some extent supports the contention of the defendant in error, but, if so, it is inconsistent with other sections of the act. In the consideration of conflicting provisions in a statute, the great object to be kept in view is to ascertain the legislative intent. 36 Cyc. 1130.

The intent of the legislature as to who shall be deemed to be employers, subject to the provisions of the Act or within the meaning of the Act, is expressed in section 4 (d) II, where it is provided that: "The term 'employer' shall mean and include. II. Every person, association of persons, firm and private corporation (including any public service corporation), * * * who has four (4) or more persons regularly engaged in the same business or employment, (except as otherwise expressly provided in this act.)" Subdivision III of this section, which is relied on by the defendant in error, does not say who shall be deemed to be employers, but rather who shall not, and its

main purpose is to provide that the act shall not apply to employers of private, domestic servants or farm and ranch labor, unless such employers elect to accept the provisions of the act.

That the intent of the legislature was to bring under the act those employers who have four or more persons regularly engaged in the "same business or employment," as provided in section 4 (d) II, instead of limiting the application of the act to those having such number of persons "in or about the same place of employment," according to the expression used in section 4 (d) III, is also indicated by the language employed in section 9, subdivision II, which reads, in part, as follows: (italics ours) :     "II. On and after August 1, 1915, every employer of four or more employees, not including private domestic servants and farm and ranch laborers, *engaged in a common employment,* shall be conclusively presumed to have accepted the provisions of this act. * * * Any employer commencing business subsequent to August 1, 1915, may make his election not to become subject to the provisions of this act at any time prior to becoming an employer of four or more employees, *in a common employment.* * * *"

Considering together the various sections and subsections above referred to, they must be held to provide that an employer is subject to the provisions of the act, without his election, if he employ four or more persons in the same business, or if he is an employer of "four or more employees engaged in a common employment."

It seems clear that the manufacture of brick, in the sense that material is made into brick, and the procuring of material to be used in such manufacture, together constitute but one business or employment.

The Commission found, and the evidence supports the finding, that the silica mine was operated by Funk "in connection with his brick business in the City of Wray." The evidence shows that the employer operated a brick manufacturing plant and brick yard in Wray, and that about 20% of the volume of material mined from the silica

bed or bank operated by Funk, and at which Sam and William Gaines were working, was used by him in the manufacture of brick at such plant or yard. The evidence shows, and it is not disputed, that more than four persons were employed by Funk in his business which involved the manufacture of brick and the mining of silica used in such manufacture. Those who were mining silica and those working in the brick yard at Wray, were each and all together engaged in a common employment, within the meaning of the expression "common employment," as used in the Workmen's Compensation Act. The reason is that the purpose of the work of each was a common one; they were working to accomplish the same general end, the manufacture of brick. See definitions of "Common Employment" in 1 Words and Phrases (2nd series), 808.

Under the views expressed in this opinion, there is no ground shown in the record upon which the order and award of the Commission should be set aside. For the reasons above indicated, the judgment of the District Court is reversed and the cause is remanded with directions to affirm the order and award of the Industrial Commission.

*En banc.*                                             *Reversed.*

Mr. Justice Denison and Mr. Justice Burke dissent.