14734

WARD v. OCEAN FOREST CLUB, INC.

(198 S. E., 385)

234

*Messrs. Wright & Burroughs,* for appellant, 

August 3, 1938.

The opinion of the Court was delivered by MR. JUSTICE BAKER.

This is an action in tort for personal injury, and was tried by a jury before Judge Hayne F. Rice at Conway, and resulted in a verdict against both defendants for actual and punitive damages. From the verdict and judgment entered Ocean Forest Club, Inc., appeals on numerous exceptions, but has limited its argument to and presented but one question, to wit: "Does the Workmen's Compensation Act afford to the plaintiff (respondent) her exclusive remedy for the injury received by her"?

The above question arises by reason of the refusal of the trial Judge to grant appellant's motion for a nonsuit, and at the conclusion of all the testimony to direct a verdict in behalf of appellant.

Since our discussion of this case will relate to the refusal of the trial Judge to grant appellant's motion for a directed verdict, the question of "burden of proof" is of no importance, and we will not herein deal therewith.

The complaint of respondent alleges that on the 10th of March, 1936, she was approached by appellant to work as a waitress at the Country Club, Myrtle Beach, S. C., which is owned by appellant, and that as a part of the understanding between respondent and appellant, it was understood that appellant would furnish transportation for respondent to and from her said work; that on the 11th day of March, 1936, after the day's work had been completed,

the appellant directed this plaintiff into a station wagon, which was operated at the time by appellant's co-defendant and agent and servant; that while said station wagon was being driven by appellant's co-defendant, occupied by respondent and others, and while proceeding from the Country Club going in the direction of the business section of Myrtle Beach, due to the negligence, carelessness, recklessness, willfulness and wantonness in various particulars therein set out on the part of appellant's co-defendant, and due to improper lights, etc., and after respondent had warned the driver as to his manner of driving, said station wagon was driven into the rear of another automobile which was being operated on the highway, giving unto respondent grievous wounds and injuries. The co-defendant of appellant defaulted, but appellant answered setting out various defenses, Paragraphs five, six and seven of the third defense being as follows:

"5. That at the time of the accident described in the complaint and at all times subsequent thereto the plaintiff was and is a corporation engaged in business under the laws of the State of South Carolina employing more than fifteen servants, other than the plaintiff, all of which servants, including the plaintiff, were protected by and insured under the provisions of the Workmen's Compensation Act of the State of South Carolina, the same being Act No. 610, page 1231, of the statutes of 1936, and that the provisions of said Act were a part of the contract and agreement between the plaintiff and defendant.

"6. That this defendant accepted the provisions in said Act and, as an incident thereof, provided insurance, carried with an approved insurer under the terms of the Act, and that it has fully discharged all duties resting upon it under the terms of said Act and, in addition thereto, advised the plaintiff of the name of the insurer, which insurer furnished to plaintiff, or her counsel, the necessary blanks for filing a claim for personal injury.

"7. That said Act furnishes to plaintiff her sole and exclusive remedy for such injury as she may have sustained, and that this defendant is not liable to plaintiff upon a cause of action as stated in the complaint."

The pertinent testimony of respondent on the issue now before this Court may be stated as follows:

Respondent, on March 10, 1936, resided at Myrtle Beach, S. C. On or about that date a lady in the employ of appellant employed respondent to commence to work for appellant as a waitress in its dining room and was to furnish her transportation from her home to the Country Club operated by appellant, and return. Respondent worked the night of the 10th and through dinner the next night, and while being transported from the Country Club to her home was injured when the station wagon in which she was directed to ride and was riding was in collision with another automobile. The compensation respondent was to receive for her services had not been agreed upon, but some time after she was injured she was paid by appellant $1.50, it being generally understood that the tips from guests would be a part, if not the major part of compensation. The main business of appellant was the operation of a hotel; that is, serving meals and providing sleeping accommodations for guests. There was no absolute definite time for which appellant agreed to employ respondent or for which respondent agreed to work, but respondent had general knowledge that the club would be operated until the Northern tourists would go back North, and she testified that she was "there to help out until the tourists business had played out." Respondent knew nothing of the Workmen's Compensation Act of this State, and no notice that appellant was operating under this Act was posted at the place where she worked.

The uncontradicted testimony on behalf of the appellant with reference to operating under the Workmen's Compensation Act came from Mr. W. C. Johnston, secretary of the "Workmen's Compensation Commission" (South Car-

olina Industrial Commission), and from Mrs. Marian Thompson, who for seven years was an employee of appellant, with the exception of six months during that period.

Mr. Johnston testified that as secretary of the commission, he had control of all records in the office; that the record showed that appellant was first covered by an insurance policy on December 4, 1935, issued by Aetna Life Insurance Company and until December 4, 1936, and that appellant had since December 4, 1935, been constantly insured, and that according to the commission's record, it had operated under the Workmen's Compensation Act since said last-mentioned date, but he did not know whether appellant had one or fifty employees—that it had proper coverage; that if they (appellant) had an accident on the job "this insurance company was responsible for any compensation to arise out of it." He also testified that the first declaration or election to come under the Act was filed by appellant on February 29, 1936, though dated February 22nd; that the commission presumes from the carrying of this compensation insurance that such employer has fifteen or fore employees unless they elect to adopt the Act; that the declaration of election filed on February 29, 1936, showed twenty-eight employees, but he did not know if appellant always had this number, or if it had one or one hundred; that the only time appellant ever filed an election to come under the Act was as above stated; that following the accident to respondent, it was reported to the commission by appellant. Section 66 of the Act provides for such report by the employer.

Mrs. Thompson testified she had been employed by appellant in a general capacity, "as general everything—chief cook and bottle washer" for seven years, with the exception of six months when she was up North; that appellant had always had at least fifteen employees, and "Q. At any time within thirty days before this accident, Mrs. Thompson, would you have had more than fifteen employees? A. Yes."

Even without the presumption created by Section 6, it would appear that but one reasonable inference could be drawn from the above testimony, which is, that appellant and respondent automatically came within the terms of the Workmen's Compensation Act under Sections 2(a) and 4, neither having given notice to the contrary, unless the employment of respondent was "both casual and not in the course of the trade, business, profession or occupation" of appellant as set forth in Section 2(b) of the Act or came within Section 14(b) of the Act which reads: "This Act shall not apply to casual employees, * * * ." It is true that the first declaration by appellant to come within the Act was not filed until February 29, 1936, but at this time it had twenty-eight employees who joined in the declaration, and appellant was then automatically operating under the terms of the Act; hence, this was a superfluous act, and evidenced only an unfamiliarity with the contents of the statute under discussion.

Having reached the conclusion that appellant was operating under the Compensation Act, we now inquire if respondent was an excluded employee.

It will be noted that there is an apparent inconsistency in Sections 2(b) and 14(b), the exclusion in 2(b) being "persons whose employment is both casual and not in the course of the trade," etc., and Section 14(b) refers only to "casual employees." However, as we view this case, is is unnecessary that we herein discuss the seeming discrepancy.

Adverting to the facts for the moment, respondent was being driven back to her home in accordance with her contract of employment, when injured.

Appellant has cited numerous cases from other jurisdictions holding that in going to and returning from the place of employment, if it is a part of the contract that the employee be furnished by the employer transportation or the means of transportation to and from work, the employment continues during the transportation, but we need

go no farther than the decisions of this Court. The case of *Covington v. A. C. L. R. R. Co.,* 158 S. C., 194, 155 S. E., 438, cites with approval the case of *Sanders v. Railway Company,* 97 S. C., 50, 81 S. E., 283, and holds that an employee returning from his work by means of transportation furnished him for that purpose by the employer is still engaged in the discharge of the duties of his employment. While these cases were brought under the Federal Employers' Liability Act, 45 U. S. C. A., § 51 *et seq.,* the principle is the same, and is here applicable.

Again adverting to the facts. Respondent was an experienced waitress, and entered the employ of appellant in such capacity without an agreement as to her employment covering any definite period of time, though she knew "as a matter in general" that the club "would operate until the Northern tourists would go back North," and that she was "there to help out until the tourists business had played out." No compensation was agreed upon, but the major portion of her earnings would come from "tips" from guests. Following her injury respondent was paid and accepted $1.50 as compensation for her services for working the evening of the 10th, and the 11th of March, 1936.

Was respondent a casual employee?

It is the generally accepted law that in construing similar statutes, the usual and ordinary definition of the word "casual" as given by the lexicographers is accepted.

Webster defines "casual" as "happening without design and unexpectedly, coming without regularity, occasional." It is defined in *Sabella v. Brazileiro,* 86 N. J. L., 505, 91 A., 1032, as follows (page 1033) : "The ordinary meaning of the word 'casual' is something which happens by chance, and an employment is not casual—that is, arising through accident or chance—where one is employed to do a particular part of a service recurring somewhat regularly with the fair expectation of its continuance for a reasonable period."

In·*Pallanck v. Donovan,* 105 Conn., 591, 136 A., 471, casual employment was construed as meaning, "occasional or incidental employment, which comes without regularity; if the employment be for a definite time, as for a week or a month, it is not casual; so, too, if it is for a part of one's time at regularly recurring periods." (Page 472.)

"An employment is not rendered casual because it is not for any specified length of time, or because the injury occurs shortly after the employee begins work. *Industrial Commission v. Funk* (1920), 68 Colo., 467, 191 P., 125. Nor does the fact that an injured employee was hurt upon the first day of his employment afford a test to determine whether his employment was casual. *Doherty v. Grosse Isle Twp.* (1919), 205 Mich., 592, 172 N. W., 596." Annotation, 33 A. L. R., 1453.

And in annotation in 60 A. L. R., 1197, supplementing annotation in 33 A. L. R., it is stated: "As stated in the earlier annotation, it is well settled that an employment is not casual where a person is employed to do a particular service or class of service, recurring somewhat regularly and with a fair expectation of continuance for a reasonable period."

We now cite a few cases in which it was held that the employment was "casual".

In *Thede Bros. v. Ind. Comm.,* 285 Ill., 483, 121 N. E., 172, it was held that a man aiding movers on a pickup job, knowing the employment to be only for one particular moving job, is a casual employee.

In *Chicago Great Western R. Co. v. Ind. Comm.,* 284 Ill., 573, 120 N. E., 508, it was held that a structural iron worker employed for a particular job only, requiring three or four days, was engaged in casual employment.

In *Diamond Livery v. Indus. Comm.,* 289 Ill., 591, 124 N. E., 609, it was held that one not on the payroll, but permitted to sleep and remain about a livery barn and occasionally do small jobs for which he was immediately paid was a casual employee.

In *Otmer v. Perry*, 94 N. J. L., 73, 108 A., 369, where a man was hired to repair a well at $1.00 an hour and the work consumed only two hours, he was held to be a casual employee.

Of course, in this case, as in all other cases, the facts make the law, and while this Court is not bound in anywise by the decisions of the Courts of other states, such decisions are necessarily influencing if logical and in accordance with apparent intent of the Legislature in the use of a word.

Respondent entered the employ of appellant for the "tourist season" in the capacity of a regular employee (waitress) for continuous service, in the due course of its business, and while there was no definite agreement as to compensation, in the absence of such agreement, the law would imply that she would be paid a reasonable amount.

Under these circumstances and facts, and under the overwhelming weight of authority construing the word "casual" as used similarly in the statutes of other states, we are constrained to hold that respondent was not a "casual employee" at the time of her injury.

Our sympathy lies with the respondent in this case, and we have reached the conclusion herein announced most reluctantly.

The judgment appealed from is reversed, and the case is remanded with instructions to enter judgment for appellant under Rule 27.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and FISHBURNE and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.

MR. JUSTICE CARTER did not participate on account of illness.