**BILL LAWLEY FORD and Universal Underwriters Insurance Company, Petitioners,**

v.

**Charles J.H. MILLER, claimant in the matter of the death of Ronald T. Miller, and Industrial Commission of Colorado, Respondents.**

No. 83CA0376.

Colorado Court of Appeals, Division 1.

Oct. 20, 1983.

White & Steele, P.C., James Dieterich, Denver, for petitioners.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Asst. Atty. Gen., Alice L. Parker, Asst. Atty. Gen., Denver, for respondents.

ENOCH, Chief Judge.

In this workmen's compensation case, petitioners, Bill Lawley Ford and Universal Underwriters Insurance Company, seek review of a final order of the Industrial Commission finding that Ronald J. Miller (deceased) sustained injuries arising out of and in the course of his employment. We set aside the order.

The referee's and Commission's orders reveal the following pertinent facts. Miller was employed as a tow truck operator by Bill Lawley Ford for just a few days prior to the subject accident. On October 8, 1981, the employer sent Miller to Grand Junction to pick up a tow truck and bring it to the employer's place of business in Meeker, Colorado. Around 5 p.m. that evening, Miller called the employer with information that his vehicle had broken down on the Rifle exit of I–70. Miller was instructed that he would be picked up by another employee, Dave Kowell. Kowell and Miller drove east to Glenwood Springs, where Kowell lived.

Miller had been drinking during the day and drank more while traveling with Kowell. Upon arriving in Glenwood Springs, Kowell called the employer about Miller's intoxicated condition and his insistence upon completing the towing job that evening. The employer told Miller to stay in Glenwood Springs that night, at the employer's expense, and that Miller could bring Kowell back to work the next morning and the two of them could tow the disabled truck to Meeker.

After the conversation, Miller continued to insist on towing the disabled truck to Meeker that evening. Because Miller verbally abused Kowell and because Kowell was aware that Miller had been in prison and was afraid of him, Kowell permitted Miller to take the tow truck he had driven to Glenwood Springs and gave Miller directions to Meeker. At approximately 10 p.m., Miller was involved in a single vehicle accident about nine miles west of the Rifle exit on I–70—the exit where the disabled truck was located and the exit he should have taken to go to Meeker. He died from the injuries suffered in the accident.

Miller's father filed a claim for benefits. In addition, because Miller had left no dependents, the regional assistant attorney general on behalf of the subsequent injury fund filed a claim seeking the statutory award provided by §.8–51–106(1)(b), C.R.S. 1973 (1982 Cum.Supp.).

The referee found that the employer's instruction to Miller to remain in Glenwood Springs did not sever the employer-employee relationship for the remainder of that day and Miller remained within the course of his employment, unless he made a distinct departure on a personal errand. The referee further found that, although at the time of the accident Miller had deviated from the most direct route to Meeker, he was a stranger to Colorado and the deviation was the result of error, not a personal errand. Therefore, such deviation did not take him out of the course of his employment. Moreover, the referee found:

"When [Miller] left Glenwood Springs in the employer's vehicle, he was in violation of the employer's instructions relating to the method in which the assigned job was to be accomplished, but delivering the disabled wrecker to Meeker was the assigned job and was an act within the course of his employment."

Accordingly, the referee concluded that Miller's injuries arose out of and in the course of his employment, ordered petitioners to pay medical expenses, and awarded $1,000 funeral benefits to Miller's father and $15,000 to the subsequent injury fund pursuant to § 8–51–106(1)(b), C.R.S.1973 (1982 Cum. Supp.). The Commission affirmed.

On review, petitioners contend that the Commission erred in concluding that Miller was injured in the course of his employment because his violation of the employer's instructions to remain in Glenwood Springs took his subsequent actions out of the course of his employment. We agree.

In *Industrial Commission v. Funk,* 68 Colo. 467, 191 P. 125 (1920), the Supreme Court stated:

" 'Disobedience to an order or breach of a rule is not of itself sufficient to disentitle a workman to compensation, so long as he does not go outside the sphere of his employment. There are prohibitions which limit the sphere of employment, and prohibitions which deal only with conduct within such sphere. A transgression of a prohibition of the latter class leaves the sphere of employment where it was, and consequently will not prevent recovery of compensation. A transgres-

sion of the former class carries with it the result that the man has gone outside the sphere.' "

In *Funk,* the employees were ordered not to work under an overhanging bank without first caving off the overhang. The employees were killed when they failed to obey the order and the overhang collapsed. The court held that violation of the order did not preclude compensability because the order related to the conduct or manner in which the work was to be performed, but did not limit the employees' sphere of employment.

■ At issue here is whether the employer's order related to the method Miller was to use to perform his work or whether the order limited his sphere of employment. Contrary to the Commission's conclusion, we hold that the order limited Miller's sphere of employment.

*Fowler v. Baalmann, Inc.,* 361 Mo. 204, 234 S.W.2d 11 (1950) is apropos to the situation here. There, Fowler was employed as an airplane flight instructor by Baalmann, Inc. On the night in question, Fowler was supposed to take a student out for a night flight. Because the weather was bad, Fowler's supervisor specifically cancelled the flight and so informed Fowler. Thereafter, without the employer knowing about it, and in violation of the order, Fowler took the student on the flight, the plane crashed, and they both were killed. In affirming the denial of compensation, the Missouri Supreme Court stated:

"An employer has the unqualified right to limit the scope of a servant's employment and activity and to determine *what* an employee shall or shall not do. The employer likewise has the unqualified right to determine *when* an employee shall do a certain thing.... The employer may terminate an employment. The prohibition which the employer laid down in this case (the direct order expressly cancelling the flight) goes deeper into the relationship of the parties than any mere rule, for it severed utterly and terminated completely the employer-employee relationship for the day. After

the order was given and the flight cancelled, in the subsequent act of taking the [flight], Fowler was not an employee of Baalmann. That relationship had ended for the day. When the accident occurred Fowler was in a place where he was prohibited from being by the positive order of Baalmann because of the danger involved." (emphasis in original)

In the instant case, to adopt the Commission's finding that the employer's order related to the method of performing Miller's task would virtually abrogate the distinction between method of performance and sphere of employment, and would deprive the employer of a means of limiting his liability.

■ Further, if an employer's order is violated, compensation is not necessarily assured by the fact that the employee is acting with the intent of benefiting his employer. *See Maintenance Management, Inc. v. Tinkle,* 40 Colo.App. 80, 570 P.2d 840 (1977). Even accepting that Miller acted with good intentions in attempting to complete his assigned task, he did so in violation of his employer's order to remain in Glenwood Springs. Therefore, we hold, as a matter of law, that the employer's order limited the sphere of Miller's employment and that, in acting in violation of that order, Miller was not acting within the course of his employment. *See Industrial Commission v. Funk, supra.*

In view of our holding that no award should have been made, we do not reach the alternative argument that the award should have been reduced by 50%. Section 8–52–104, C.R.S.1973.

Accordingly, the Commission's order is set aside and the cause is remanded with directions to dismiss the claims.

BABCOCK, J., concurs.

TURSI, J., dissents.

TURSI, Judge, dissenting.

I respectfully dissent.

The mission upon which Miller had been dispatched by his employer was to go from

Meeker to Grand Junction to pick up a tow truck and return it to Meeker. Based on competent evidence, the Industrial Commission found that Miller suffered his fatal accident while endeavoring to complete this mission within the scope and course of his employment. It further found that although Miller had violated an order, he had not left the sphere of his employment. On these facts, the Commission properly concluded that the injury suffered and subsequent death, occurring within the course of and scope of Miller's employment, was compensable.

In setting aside the award of the Commission, the majority misreads the workmen's compensation statutes and too narrowly construes existing case law. Generally, misconduct of an employee, whether negligent or willful, is immaterial in workmen's compensation law unless it is a deviation from the scope or course of employment. 1A *A. Larson,* Workmen's Compensation Law § 23.00 (1978).

In Colorado when injury results from an employee's willful failure to obey any reasonable rule or where the injuries result from intoxication of the employee, compensation must be reduced 50%, § 8–52–104, C.R.S.1973. However, our statutes do not provide for total forfeiture.

Here, the employee (when injured) was not on a mission of his own nor was he overstepping the ultimate work to be done. Rather, his misconduct involved a violation of a prohibition relating to the method of accomplishing the ultimate act. Thus, the act remains within the course, scope, and sphere of his employment. *Industrial Commission v. Funk,* 68 Colo. 467, 191 P. 125 (1920).

In *Fowler v. Baalmann,* relied upon by the majority, the Supreme Court of Missouri found that the prohibition which the employer laid down in that case "goes deeper into the relationship of the party than any. mere rule for it severed utterly and terminated completely the employer/employee relationship of the day."

In contrast, here, the Industrial Commission found that the employer did not terminate the employment for the day but merely told Miller that he felt it was the best thing for all concerned if Miller would get a motel room in Glenwood Springs and wait until the next morning when he would have assistance in picking up the disabled truck. *See Liberty Mutual Insurance Co. v. Boggs,* 66 S.W.2d 787 (Tex.Civ.App.1933); *Turner Elkhorn Mining Co. v. Goble,* 506 S.W.2d 521 (Ky.App.1974); *General Transportation, Inc. v. Industrial Commission,* 120 Ariz. 510, 586 P.2d 1322 (App.1978). On the basis of this finding, the Industrial Commission concluded that although Miller was in violation of the employer's instruction relating to the method in which the assigned job was to be accomplished, the delivery of the disabled wrecker to Meeker was his assigned job and was an act within the course of the employment. In my view, these findings and conclusion are supported by the record and, thus, are binding on review.

However, I disagree with the Commission's finding that reduction provided for in § 8–52–104 should not apply in this case because the claim is on behalf of the subsequent injury fund arising under § 8–51–106, C.R.S.1973. Statutes must be read in pari materia, and the reduction of benefits to claimants who have willfully violated a rule or been injured because of intoxication serves not only the purpose of penalizing the wrongful act, but ameliorates the burden placed upon an employer in cases of willful violation of its orders.

Therefore, I would affirm the finding of the Commission that Miller's death was occasioned by an injury growing out of and in the scope of his employment, but I would reduce the award by 50% as provided in § 8–52–104.